## Hill v. Huntress.

Several instruments made at the same time are to be construed together as parts of one contract, where it is necessary to carry into effect the agreement and intention of the parties.

A negotiable promissory note and a written agreement, made at the same time, relating to the manner of payment of it, will be construed as one special agreement, as between the original parties and those who stand in the like situation.

Where such agreement has been from time to time modified by parol agreements, an assignee of the note will acquire no right of action by a transfer of the note after due.

And no action will lie by the promisee, to recover the balance due on the note in money, where it was agreed to be paid otherwise, and payment has been delayed solely in consequence of other arrangements made by mutual consent.

Assumpsit for $2000, money had and received. The plaintiffs, William Hill and others, specified under this count the joint and several promissory note of the defendant, Noah C. Huntress and James C. Gowen, dated May 3, 1847, for $2,173.70, payable to Oliver Hill or order, one fourth in one year, one fourth in two years, one fourth in three years, and the remaining fourth part in four years, with interest annually, indorsed and transferred to the plaintiffs.

The following sums were indorsed on the note: Oct. 6, 1849, received $347.88; Jan. 15, 1852, $256; Feb. 13, 1852, $107; error on bill of Lowe & Co., April 22, 1853, $251.22; Feb. 12, 1856, received $378.69; April 14, 1859, received interest to this date on $2000, two years two months and two days, $402.70; also, $250 in part. The interest indorsed as of April 14, 1859, was corrected.

The plea was the general issue, with a brief statement, that the defendant would offer, under the general issue, and rely upon, as matter of defense, the following written agreement of said Oliver Hill, and would prove that he was ready and offered to pay the balance of said note in the manner and within the time in said agreement specified and provided;

"Whereas Noah C. Huntress and James Gowen, of Barnstead, county of Belknap and State of New-Hampshire, have this day purchased of me certain real estate in said Barnstead, and have given me in payment therefor their promissory note for the sum of two thousand one hundred and seventy-three dollars and seventy cents, payable, one fourth in one, one fourth in two, one fourth in three, and one fourth in four years, with interest annually, dated May 3, 1847: Now, in consideration aforesaid, I hereby agree to furnish and provide said Huntress and Gowen with what hides and skins they may need, as fast as they may need them to tan, to such an extent and amount as that the leather and proceeds of said hides, after paying the original cost of the hides and skins and interest on the same, and all costs, charges, expenses and commissions on the same, shall amount to a sum sufficient to pay the note aforesaid, and all the interest on the same; it being the intention to pay said note in tanning and currying; said hides and skins to be delivered at Great Falls, or Concord, N. H.

                                                      Oliver Hill.
May 3, 1847."

The note was indorsed by Oliver Hill to the plaintiffs in Oct. 1859, and the writ was dated Oct. 18, 1860.

The written agreement specified was offered in evidence and admitted by the court against the plaintiffs' objection, the court ruling that the note in suit must be regarded as a dishonored note in the hands of the plaintiffs. It appeared in evidence that Huntress and Gowen were originally partners in the business of tanning, in Barnstead, and that Gowen died in 1853; the note was secured by a mortgage upon the defendant's real estate in Barnstead, which was shown to have been the original consideration of said note. Oliver Hill and Huntress were brothers-in-law by marriage. After the date of the note and agreement, in 1847 to 1857, O. Hill furnished to Huntress and Gowen, and to Huntress after the decease of Gowen, calf skins and hides, in the years and at the cost following: 1847, 900 calf skins, cost, $1012.50; 1848, 700 do., $787.50; 1851, 925 do., $995.74; 1852, 931 do., $936.69; 1853, 850 do., $918.75; 1854, 1540 do., $1897.50; 1857, 954 do., $1073; 1858, 500 do., $687.50, amounting to $8309.13; and in 1847, 400 hides, cost $942.23; 1848, 350 do., $539.97; 1849, 620 do., $1273.72; 1850, 200 do., $568.28; 1851, 426 do., $939.66; 1854, 50 Putney, cost, $65; 1855, 200 do., $344.25, amounting to $4673.11; in the whole, $12,982.24; which were to be tanned into leather, and they were so tanned and consigned to commission merchants in Boston, and by them sold.

The commission merchants, after deducting 5 per cent for commissions and guaranty, paid over the proceeds to Oliver Hill, and from such proceeds Hill, upon settlement with the defendant, first deducted the original cost of the hides, and interest on the same; also, advances for freight, his own commission of one per cent, and advances and interest made by virtue of another verbal contract near the date of the note, and, as the defendant testified, after it, by which it was agreed between Hill and Huntress that Hill was to furnish, whenever requested by the defendant, necessary oil, tallow, bark, and cash for tanning purposes; and it was shown that Hill accordingly furnished oil, tallow, and lampblack, and a small bill of tools, and some cash, from 1847 to 1859 inclusive, to the amount, as charged at the different settlements made by the parties, including interest, of $1306.29, of which sum it appeared that about $400 was furnished in the first four years after the date of the note. It also appeared that, at the dates of the several indorsements upon the note, the parties settled and adjusted these advances, and the amount indorsed on the note was in fact for balances found in the hands of Hill at the date of those settlements. At the time of the first settlement, Oct. 6, 1849, Hill held a note against Gowen and Huntress, amounting to $406.91, which was allowed to Hill and taken up, which had no connection with the note in suit. At the settlement of Jan. 15, 1852, there was allowed to Hill a claim for $106.74 for cash advanced by him to Huntress. The parties settled in December, 1853, when $106.74 was allowed to Hill for cash advanced for a horse, and $114.12 for a note paid by Hill at the Rochester Bank, at the request of Huntress; $37.85 for two private promissory notes due to Hill, and $9.66 for insurance money, tools, &c.;

and upon this settlement there remained due to Hill $32.30, which was settled by the defendants' note on interest. In the settlement of Feb. 12, 1856, of their leather accounts, this note of $32.30 was taken up by the defendant, and there was allowed by the defendants to Hill $300 for cash advanced by him to Mrs. Gowen, leaving the amount then indorsed on the note of $251.22. A balance of cash, $41.53, was, by consent of the parties, at the time of the trial, allowed in part of the note. In 1860, after O. Hill had transferred this note to the plaintiffs, there was found due, upon settlement of another leather account, a balance of $199 in Hill's hands, for which he gave his note to Huntress; this amount the defendant claimed should be allowed on the note in suit, and the judge ruling that it might be applied in payment *pro tanto*, it was by consent of the plaintiffs so allowed, upon the surrender of the note by Huntress.

The defendant contended, and offered evidence to show that, during all the first four years after the date of said note, he was *always ready to pay it according* to its tenor and said written contract; that he had at his tannery forty-one vats ready and fit for use, only half of which were used at any one time; that he had sufficient labor employed, and all the other facilities requisite to do the tanning according to contract; that he notified Hill personally during the first four years, that he wanted to do the work, and requested hides of him for tanning; that he wrote to him and sent word by others to the same effect; that he was obliged to dismiss one of his hired men because he could not get work to do; that he had never had sufficient hides furnished him to enable him to pay the note, though he was always ready to pay it in his professional labor, &c.; and that the note should not be considered a money note, and the plaintiffs were not entitled to maintain the action.

On the other hand, the plaintiffs insisted that the agreement of O. Hill was an independent contract, and could not operate to defeat the note; that the parties to the note had so considered and treated it from time to time; that by the defendant's consent he had waived all right to have the note considered otherwise than a money note, by voluntarily extending the time of payment, and by varying and abandoning the original contract with O. Hill, in permitting large sums upon different settlements to be otherwise appropriated, and not applied upon this note.

It was not contended by the plaintiffs that O. Hill had furnished hides enough to pay the note during the first four years, but they contended that if the defendant had applied the money which went to discharge the other contracts, to the payment of this note, and if the plaintiff had furnished his own oil and other materials for tanning, sufficient means would have been left for the payment of the note in suit.

The plaintiffs offered to show that O. Hill did furnish hides and skins more than sufficient to pay said note, allowing the common rates or price for tanning. The court disallowed the testimony as immaterial, and the plaintiffs excepted.

O. Hill testified that he furnished no hides for some years to said

Huntress, because hides were so high in price and leather was so low that the business of tanning was unprofitable, and would be carried on at a loss, and that he so informed the defendant, and had his consent to the delay. This was not fully admitted by the defendant. The testimony in the case came principally from Huntress and O. Hill.

A verdict was taken by consent, subject to be confirmed, modified or set aside, or a judgment rendered for the defendant, or a new trial granted, as the whole court might determine.

*Wells & Eastman,* for the plaintiffs.

*Christie & Kingman,* for the defendant.

BELL, C. J. The note in question has the form and requisites of a negotiable promissory note. If it had been indorsed before it was due, for a valuable consideration, without notice of any agreement between the original parties respecting it, it might have been collected as a cash note, and it would not have been subject to any defense which might have affected the original holder. The whole note was by its terms payable in four years. It was more than twelve years old when it was indorsed. It was long overdue and discredited, and was therefore subject in the hands of the indorsee to every equity by which it was affected in the hands of the original party, and it was open to any defense which the promisor had a right to make against the payee. *Odiorne* v. *Howard,* 10 N. H. 343; *Hale* v. *Boardman,* 14 N. H. 41; *Ordiorne* v. *Woodman,* 39 N. H. 543.

As between the original parties, notwithstanding its form, this instrument is but one part of a special contract, the other part of which, as it was made, was contained in the written agreement of the same date, and purporting to be executed at the same time. Different instruments are to be construed together, as parts of the same contract, where it is necessary to carry into effect the agreement and intention of the parties. *Odiorne* v. *Sargent,* 6 N. H. 401. In that case a note was signed by the defendant to the payee or order, and on the same paper an agreement was written, signed by the payee, agreeing to take his pay in hauling if done in six months. No hauling having been done or offered within that time, the note was then indorsed, and an action brought on it by the indorsee, and it was held that, the six months having expired without payment, the agreement had become inoperative; and after that time the instruments were no longer to be construed together, and the note might be negotiated, and a suit maintained by the indorsee. It is evident that if the conditional clause of the agreement had been omitted, the writings must have been construed together as parts of a special agreement, and so is the expressed opinion of the court.

In the present case there is no such condition. The payee agrees to furnish hides and skins to the promisors in the note as fast as they need them to tan, to such an amount that the proceeds, after deducting cost, &c., shall pay the note and interest; " it being the intention to pay said note in tanning," &c.

Taking the two instruments together, the agreement is, that the promisors shall pay $2,173.70 in tanning hides, to be furnished by the payee as fast as the promisors need them, to such amount that, after deducting the cost, the proceeds may pay the note and interest. The promisors have tanned all the hides furnished them. The effort now is to compel them to pay the balance of the note in money. The right of the indorsee is no greater than that of the payee, if he has any right whatever. The case may be considered then, as if the action was brought by Hill in his own name, and he had declared upon the whole contract, as it was made, as a special agreement. In such case he must allege that he has performed the condition precedent of furnishing the hides. This the case shows he has not done. He must show that the defendant has failed to perform some of the things which he had stipulated to do; and this he could not do without performing his own precedent engagements. He admits he has not furnished the hides, except in part, because hides were so high in price and leather was so low that the business was unprofitable. The payee could not recover, then, upon a declaration on the note, nor upon a declaration upon the special agreement contained in the note and written contract.

To maintain any action, he must declare upon the special agreement contained in the writings and in the parol agreements by which they have been subsequently modified. And if he can show a failure on the part of the defendant to perform his agreement as thus modified, he will be entitled to recover his damages. But if the original contract has been modified from year to year for successive years, in the manner stated by the case, its entire character has been changed; the note is no longer the existing contract of the parties, but the contract is in great part a parol agreement respecting these writings. Such an agreement is not negotiable; and the present plaintiff took nothing by the indorsement but an equitable right to maintain an action in the name of the original party, if he can show a breach, on the part of the defendant, of the agreement comprised in these writings and all the verbal agreements since made.

It appears that immediately after the contract was entered into, it was modified by an agreement of Hill and Huntress, by which Hill was to furnish, when requested, oil, tallow, bark, and cash for tanning purposes, to be deducted, like the cost of the hides, from the proceeds of the leather tanned. This must almost unavoidably defer the payment of the note, but such delay by mutual consent would constitute no breach of the contract. At various times notes and claims of Hill against Gowen and Huntress, or Huntress alone, were allowed and paid out of the proceeds of the tanning. This, too, was done by mutual consent; and, though it delayed the payment of the debt and the fulfillment of the contract, it was not a breach of it. It was merely a waiver, to that extent, of the original and modified contract. During some of the years since the date of the contract, no hides were furnished, because the prices were such that no profit could be realized from the business. This, it must be taken from the case, was also done by consent, and necessarily post-

poned the completion of the contract; but it was not a breach. So the whole amount of hides needed by the defendant seems not to have been furnished in any year; but no breach can be claimed on this account, since the parties have acquiesced and have continued to treat the contract as existing and unbroken.

None of these modifications affect the point of the kind of payment to be made. The debt was originally payable in tanning of hides, to be furnished by Hill. No agreement has been made to change this mode of payment, and it is still payable in tanning, and not in money. The changes of the agreement being assumed to be made by consent, the contract has not been violated, and the money can not be recovered as damages. The stipulations as to time having been waived, the contract remains as it would have been if no time had been originally agreed upon. The payee's contract would be to furnish the hides in a reasonable time, and the defendant's to do the tanning in a reasonable time, the defendant being bound to indicate his needs, and to call for the hides, and the payee having a right to tender the hides and other materials as fast as the nature of the defendant's establishment would reasonably admit of his tanning them.

The action, then, if brought by or in the name of Hill, is prematurely brought before a breach has occurred, and before the party has gained a right to recover any damages, and there must consequently be

*Judgment for the defendant.*