Strafford,
No. 4679.

GERALD M. PAISNER & a. v. VALMORE RENAUD & a.

Argued January 6, 1959.

Decided April 7, 1959.

*Burns, Calderwood, Bryant & Hinchey* (*Mr. Hinchey* orally), for the plaintiffs.

*Charles F. Hartnett, Fisher, Parsons & Moran* and *Paul B. Urion* (*Mr. Hartnett* orally), for the defendants.

LAMPRON, J. The specifications, which were expressly made a part of the agreement between the owners and the contractor, required the latter to furnish, on request, a completion bond "guaranteeing the completion of the work and materials involved in this contract." This bond was to be "retained by him during the period of the responsibility of the contractor under . . . Guarantee." The guarantee clause provided that "the contractor shall guarantee the work for a period of ONE YEAR from the date of acceptance, and during that period shall make good at his own expense any faults or imperfections that arise due to defects in materials or workmanship."

Such a bond was furnished with defendant Renaud as principal and defendant Century Indemnity Company (hereinafter referred

to as company) as surety. It guaranteed the performance of the contract between the Paisners and Renaud which was referred to and made a part of the bond. The conditions of the bond were "that if Principal shall indemnify the Obligee(s) against any loss or damage directly arising by reason of the failure of Principal to faithfully perform said contract . . . then this obligation to be null and void, otherwise to remain in full force and effect."

When as in this case, a bond refers to and is conditioned on the performance of a specific agreement the latter's terms become a part of the bond and the instruments should be read together as a whole. *Kenney* v. *Barry*, 86 N. H. 35, 36; 9 Appleman, Insurance Law and Practice, *s.* 5276, *p.* 70. See *Bogosian* v. *Fine*, 99 N. H. 340, 344. By its terms the bond insured the faithful performance of the contract by Renaud. Thus the liability of the company as surety is coextensive with that of the principal Renaud under the contract and specifications. *Lavigne* v. *Lavigne*, 87 N. H. 223, 225; 9 Am. Jur., Building and Construction Contracts, *s.* 88, *p.* 57; 9 Appleman, *op. cit. supra* at *p.* 72.

There was evidence that on the evening of November 26, 1952, hot water leaked from a convector in the living room of plaintiffs' home covering with water the floors in it, the dining room and the front hall. The floors, the wall-to-wall carpet and the underpadding in those rooms were damaged thereby. There was also evidence that the leak happened because "this particular joint in question had been poorly soldered." It could be found on the record that the damage arose "due to defects in . . . workmanship." Under the previously mentioned guarantee clause in the specifications the contractor was to "make good at his own expense any faults or imperfections that arise due to defects" within one year from the date of acceptance of the house by the plaintiffs.

In the general agreement pertaining to the construction of this house executed by the parties, Renaud was expressly designated as the contractor. The above guarantee clause was contained in that part of the specifications which applied to the contract generally and by its terms obligated the contractor. The Court ruled correctly that even though one McCoole, a plumbing and heating contractor, installed the heating system Renaud as the general contractor was the party bound by the above guarantee. *Perry* v. *Company*, 99 N. H. 451, 453.

In ascertaining the meaning of this clause "the true test is what did the parties mean by the language they employed."

*Kendall* v. *Green,* 67 N. H. 557, 558; Restatement, Contracts, s. 226. To arrive at the answer the agreement and the specifications should be examined as a whole (*Smith* v. *Furbish,* 68 N. H. 123, 129), and the language used given the meaning which would usually be given to it by persons in general reading and acting upon it. *Dover* v. *Insurance Co.,* 92 N. H. 59, 61; *Citizens Nat. Bank* v. *Hermsdorf,* 96 N. H. 389, 393.

By the specifications, under a clause entitled "Protection of Public," the contractor was required to "provide and maintain all legal and necessary guards . . . to protect fully all persons from loss, damage or injury to either their persons or property" and "be wholly responsible should any loss, damage or injury occur through the neglect, carelessness or incompetence of himself, his sub-contractor or his employees." He was also to "make good any injury to the property of the neighboring proprietors which may be caused by the construction of his work." He was to carry "public liability and workmen's compensation insurance . . . and he agrees to protect himself and the owners against all loss or damage by accidents to employees or the public."

The specifications also provided that "any work furnished by the contractor which is defective in material or workmanship, or both, or which is not fully in accord with the drawings and specifications . . . will be rejected and shall be immediately torn down, removed and remade and replaced . . . . Any work disturbed in effecting the change shall be restored . . . at the expense of the contractor." It was further provided that "any work included in this contract injured during the period of construction from any cause shall be made good at the expense of the contractor."

A fair interpretation of the language of the guarantee clause in itself and in the light of the specifications as a whole leads to the following conclusions. The parties intended that the general contractor, Renaud, was to make good by replacement or repair any defective work or materials as well as any part of the buildings damaged or subject to replacement as a result of such defective work or materials. *Francoeur* v. *Stephen,* 97 N. H. 80, 81. The damage done to the floors in this case is within this category. They did not intend, however, that the guarantee would impose on Renaud the responsibility to make good for damage to the contents placed in the home by the occupants such as the rug and under-padding. *Johnson* v. *Waisman Brothers,* 93 N. H. 133.

There was evidence to support a finding that Renaud did not

comply with the provisions of the guarantee as applied to the damage to the floors. Hence the company having contracted to indemnify the Paisners "against any loss or damage directly arising by reason of the failure of Principal to faithfully perform said contract" could be found liable to plaintiffs along with Renaud, and the plaintiffs could properly proceed against both. *Morrison* v. *Bank,* 65 N. H. 253, 280.

The fact that the architect did not supervise the construction as was first contemplated in the specifications was not such a material change in the contract as to affect the liability of the surety especially since this change took place before execution of the contract by Renaud. See Arant, Suretyship, *s.* 67, *pp.* 278, 279.

Paragraph (2) of the bond gave the surety the right to secure performance of the contract within thirty days after the receipt of notice of default. Since the company takes the position that there was no responsibility on the contractor or itself to repair or pay for any of the damages claimed by the plaintiffs we fail to see how any failure of the plaintiffs to give the company such notice could have prejudiced it or can relieve it of liability. *Therrien* v. *Maryland Cas. Co.,* 97 N. H. 180, 182. Defendants' motions for nonsuit and directed verdict were properly denied.

We have considered all of defendants' other exceptions which could in any way bear on the issue of liability and have found no error. As that issue can be separated from the issue of damages and it clearly appears that it was in no way affected by error as to damages, the issue of liability need not be retried. *Moulton* v. *Langley,* 81 N. H. 138, 139, 141; see *Hadley* v. *McLaughlin,* 100 N. H. 497, 503.

As it is impossible to determine what part of the verdict was improperly awarded for damages to the rug and underpadding, the whole verdict must be set aside and the case remanded for a determination of the amount of the damages to the floor.

The question of whether expert testimony as to the cost of repairing this damage is admissible when based on an examination by the witness some years after the incident may come up on retrial of that issue. This fact may affect the weight of the testimony but does not make it incompetent as a matter of law. *Ricker* v. *Mathews,* 94 N. H. 313, 317.

*Remanded.*

All concurred.