# Kearsarge Metallurgical Corporation vs. Peerless Insurance Company.

Suffolk.  December 3, 1980. — March 13, 1981.

Present: Hennessey, C.J., Braucher, Kaplan, Wilkins, & Abrams, JJ.

*Conflict of Laws.  Contract*, Bond, Arbitration.  *Surety.  Arbitration*, Surety's obligation.  *Jurisdiction*, Forum non conveniens.  *Practice, Civil*, Summary judgment.

Under New Hampshire law, a surety which issued a bond guaranteeing the performance of a construction contract and adopting by reference the terms of the contract was bound by an arbitration clause in the contract and by a subsequent arbitration award against the surety's principal. [166-168]

A judge did not abuse his discretion in denying a defendant's motion to dismiss on the ground of forum non conveniens an action to enforce an arbitration award which had been confirmed by a Massachusetts court pursuant to G. L. c. 251, § 16, even though the parties to the action were New Hampshire corporations, the building over which the original contract dispute arose was located in New Hampshire, and the case raised legal issues of first impression under New Hampshire law. [168-169]

In an action to enforce an arbitration award against the surety on a construction contract, affidavits filed by the surety in opposition to a motion for summary judgment alleging that representatives of the obligee had stated that it would not seek damages under the contract if the surety undertook to complete the project did not disclose the existence of genuine issues of material fact with respect to the surety's liability where the surety was required by the terms of the bond and the underlying contract to raise all claims relating to the contract at arbitration. [170-171]

Civil action commenced in the Superior Court Department on February 6, 1979.

A motion to dismiss was heard by *Adams*, J., and the case was heard by *Mitchell*, J., on motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Allan Green* (*Robert D. Friedman* with him) for the defendant.

*Irvin D. Gordon* for the plaintiff.

ABRAMS, J. The defendant Peerless Insurance Company (Peerless) appeals from the entry of summary judgment against it and in favor of Kearsarge Metallurgical Corporation (Kearsarge), enforcing an arbitration award against Peerless. Kearsarge had previously obtained an arbitration award against Waghorne-Brown Company of N.E., Inc. (Waghorne), Peerless's principal under a performance and payment bond issued by Peerless. Peerless claims that the judge erred by (1) denying its motion to dismiss for failure to state a claim upon which relief could be granted; (2) denying its motion to dismiss for forum non conveniens; and (3) granting summary judgment in favor of Kearsarge when the affidavits and pleadings on file demonstrated there were genuine issues of material facts.[1] We granted direct appellate review. We affirm.

We summarize the facts. On September 16, 1975, Kearsarge entered into a "Building Construction Agreement" with Waghorne, a New Hampshire corporation then engaged in the construction business. Pursuant to that contract, Waghorne agreed to act as general contractor for the construction of a manufacturing building for Kearsarge in Conway, New Hampshire. The contract stated the completion date of the project as December 31, 1975, and further specified that all times stated in the contract "are of the essence." It also stated that in the event completion was delayed more than sixty days thereafter by "any neglect or omission" of the contractor, Kearsarge (through its representative, the clerk of the works) was entitled to assess penalties of up to $500 a day for each additional day of

---

[1] The arbitrator's award against Waghorne was confirmed in the Superior Court, and judgment was entered thereon. G. L. c. 251, §§ 11, 16, and 17.

delay.[2] The contract also provided that "[a]ll claims and disputes" arising thereunder were to be "subject to arbitration" in accordance with the rules of the American Arbitration Association.[3]

Kearsarge required Waghorne to obtain a performance and payment bond to insure Waghorne's performance under the contract. Waghorne obtained such a bond from Peerless on September 16, 1975, in the amount of $264,216.00, the price of the underlying construction contract. The bond stated that the Kearsarge-Waghorne contract "is made a part of this bond, the same as though fully set forth herein."[4]

The building was not completed by the agreed date of performance, nor by the date after which Kearsarge was entitled to assess penalties for delays due to the neglect or

[2] Section ten of the contract provided: "All times stated herein or in the contract documents are of the essence hereof.

"The contract times may be extended by a change order from the Clerk of the Works for such reasonable time as he may determine, when in his opinion contractor is delayed in work progress by changes ordered, labor disputes, fire, prolonged transportation delays, injuries, or other causes beyond his control or which justify the delay. Provided, however, that in the event the completion of the project is delayed by any neglect or omission of the Contractor more than Sixty (60) days after date set forth in Section Five of this Agreement, the Clerk of Works may assess penalties of up to Five Hundred Dollars ($500.00) for each day such delay may continue thereafter."

[3] Section twelve of the contract provided: "All claims and disputes relating to this contract shall be subject to arbitration at the option of either Kearsarge, Contractor, or the Clerk of the Works in accordance with the Arbitration Rules of the American Arbitration Association for the construction industry then obtaining. Written notice of demand for arbitration shall be filed with the other party to the contract and with the American Arbitration Association, within a reasonable time after the dispute has arisen. Provided, however, that no such request for arbitration shall delay or halt work on the project except by mutual consent of Kearsarge and Contractor."

[4] The performance and payment bond also stated: "Now, THEREFORE, if the above bounden Principal shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by said Principal kept, done and performed . . . then this obligation shall be void; otherwise the same shall remain in full force and effect . . . ."

omission of Waghorne. In May, 1976, Waghorne advised Kearsarge and Peerless that it would not be able to complete the project. On June 16, 1976, Waghorne filed a voluntary petition in bankruptcy in the United States District Court for the District of New Hampshire. Waghorne was discharged in bankruptcy on September 3, 1976. Following negotiations between Peerless and Kearsarge, Peerless took over the construction contract, and hired subcontractors to work on the job. Kearsarge moved into the building in 1976, during the completion work. However, according to an affidavit by Kearsarge's president, all the work called for in the original contract had not been completed as of May 14, 1979.

On June 21, 1978, pursuant to the arbitration clause in the Kearsarge-Waghorne contract, Kearsarge filed a demand for arbitration with the American Arbitration Association in Boston, seeking to recover damages "for incomplete and non-conforming work and for delay damages." Copies of the demand were sent to both Waghorne and Peerless. Attorneys for Waghorne informed Kearsarge and Peerless that Waghorne had been adjudicated a bankrupt and ceased all business operations. Kearsarge continued to demand arbitration, and continued to provide Peerless with copies of all the documents relating to its request for arbitration. The arbitration took place on September 26, 1978, without representatives of either Waghorne or Peerless present.[5] Subsequently, the arbitrators made an award in favor

---

[5] Under the Construction Industry Arbitration Rules of the American Arbitration Association, an arbitration may proceed in the absence of a party thereto. Section thirty of those rules, effective September 1, 1977, provides: "Unless the law provides to the contrary, the arbitration may proceed in the absence of any party, who, after due notice, fails to be present or fails to obtain an adjournment. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as deemed necessary for the making of an award." That rule has been in effect during all times relevant to this dispute.

of Kearsarge, holding that Waghorne shall pay Kearsarge $140,094.[6]

1. *The effect of the arbitration clause.* Peerless argues that the judge below misapplied the law of New Hampshire[7] in holding that the language of the Peerless bond should be construed as binding Peerless, as surety, under the arbitration clause of the Kearsarge-Waghorne contract. Therefore, Peerless argues, the judge should have allowed its motion to dismiss for failure to state a claim on which relief can be granted, and should have denied Kearsarge's motion for summary judgment. We do not agree.

Under New Hampshire law, if "a bond refers to and is conditioned on the performance of a specific agreement the latter's terms become a part of the bond and the instruments should be read together as a whole." *Paisner* v. *Renaud*, 102 N.H. 27, 29 (1959). *Maine Bonding & Cas. Co.* v. *Foundation Constructors, Inc.,* 105 N.H. 470, 473 (1964) ("the bond, contract and the specifications . . . constitute an integrated obligation"). *Rivier College* v. *St. Paul Fire & Marine Ins. Co.,* 104 N.H. 398, 401 (1963). *Kenney* v. *Barry,* 86 N.H. 35, 36 (1932). The rule that a bond must be read together with the contract it secures derives from the broader principle of law that "[d]ifferent instruments are to be construed together, as parts of the same contract, where

---

[6] The award was computed as follows:

| | |
|---|---|
| $137,500.00 | Damages |
| + 15,000.00 | Uncompleted or nonconforming work. |
| $152,500.00 | |
| − 12,406.00 | Retainage held by Claimant |
| $140,094.00 | |

[7] There is no dispute that the law of New Hampshire applies to the issue of Peerless's liability under its bond, since the bond was made in New Hampshire. See *Clark* v. *State St. Trust Co.,* 270 Mass. 140, 150 (1930); *Lennon* v. *Cohen,* 264 Mass. 414, 425 (1928). The result would be the same under the approach of the Restatement (Second) of Conflict of Laws, §§ 186-188 (1969), which applies the law of the State having the most significant relationship to the transaction and with the parties. See generally *Pevoski* v. *Pevoski,* 371 Mass. 358 (1976).

it is necessary to carry into effect the agreement and intention of the parties." *Hill* v. *Huntress,* 43 N.H. 480, 483 (1862). *Bogosian* v. *Fine,* 99 N.H. 340, 344 (1955). By its terms, the Peerless bond made the Kearsarge-Waghorne contract "a part of this bond, the same as though fully set forth herein."[8] "[T]he liability of the company as surety is coextensive with that of the principal . . . under the contract and specifications." *Paisner* v. *Renaud, supra* at 29. *Lavigne* v. *Lavigne,* 87 N.H. 223, 225 (1935). See *Powers Regulator Co.* v. *United States Fidelity & Guar. Co.,* 7 Mass. App. Ct. 913 (1979); *Fidelity & Deposit Co.* v. *Parsons & Whittemore Contractors Corp.,* 48 N.Y.2d 127, 131 (1979) (stating that implicit in the surety's acceptance of an underlying contract which included an arbitration agreement is that "for purposes of later determining its liability under its performance bond, it would accept and be bound by the resolution reached in the arbitration forum"). See generally 9 J.A. Appleman, Insurance Law and Practice § 5276, at 70-71 (1943).

Although no New Hampshire case has specifically decided that an arbitration clause in a construction contract is binding upon the surety who guarantees performance of that contract, we think that New Hampshire courts would follow the general principles outlined above and hold that where the parties to a contract have agreed to resolve their disputes by arbitration, the surety who guarantees the performance of the contract will be likewise bound. "[I]t is not the practice of courts to require a retrial of the facts which the arbitrators have already decided." *Southwestern N.H. Transp. Co.* v. *Durham,* 102 N.H. 169, 174 (1959).

For the reasons stated above, we agree with the judge that under the law of New Hampshire, Peerless was bound

---

[8] Since Peerless adopted by reference the arbitration agreement in the Kearsarge-Waghorne contract, the absence of an arbitration clause in the performance and payment bond does not free Peerless from its obligations under the construction contract, as Peerless implies. See *Fidelity & Deposit Co.* v. *Parsons & Whittemore Contractors Corp.,* 48 N.Y.2d 127 (1979).

by the award of the arbitrators, and, therefore, Peerless's motion to dismiss was properly denied, and Kearsarge was entitled to summary judgment.[9]

2. *Forum non conveniens.* Peerless argues that since all parties to this suit were New Hampshire corporations, the building over which the dispute arose is located in New Hampshire, and the case raises legal issues of first impression under New Hampshire law, the trial judge erred in denying its motion to dismiss on the grounds of forum non conveniens. The decision to refuse to hear a case on the ground of forum non conveniens is left to the discretion of the trial judge. See *Universal Adjustment Corp.* v. *Midland Bank, Ltd.*, 281 Mass. 303, 318 (1933) ("The determination of the trial judge not to retain jurisdiction of the case at bar, so far

---

[9] In support of its position, Peerless relies on *C-E Bldg. Prods., Inc.* v. *Seal-Rite Aluminum Prods. of N.H., Inc.*, 114 N.H. 150 (1974). In that case, a supplier brought suit against a company for the value of goods it had supplied to it. During the pendency of the suit, the company filed in bankruptcy. The company's trustee in bankruptcy concluded that it had no defense to a motion for summary judgment filed by the supplier, and therefore permitted summary judgment to be entered against it. No notice of that proceeding was given to a surety who had guaranteed payment for goods supplied to the bankrupt company. On appeal, the court held that the surety could not prevent judgment from being entered against the principal, since the judgment against the principal would not be binding upon the surety. For several reasons, we do not think that the holding in *C-E Bldg. Prods., Inc.* is controlling upon this case.

First, in that case, the court emphasized that the surety was not prejudiced by the judgment against the principal, on the ground that the liability of the surety was not coextensive with that of the principal. The surety only had guaranteed payment for goods supplied to the principal, but had not agreed to pay any judgment that might be recovered against the principal. Since we construe the language of the Peerless bond as incorporating all the obligations of the principal under its construction contract, the award against Waghorne is conclusive proof of the liability of the surety. See 10 S. Williston, Contracts § 1256, at 816 (3d ed. 1967).

Second, the surety in *C-E Bldg. Prods., Inc.* was not afforded an opportunity to participate in the summary judgment proceedings between the obligee and the principal. In the instant case, the surety repeatedly was given notice of the arbitration proceedings, and chose not to participate.

Finally, *C-E Bldg. Prods., Inc.* did not involve an arbitration agreement and, therefore, the particular reasons for binding a surety to an arbitration award granted against its principal, *see supra* at 166-168, were not present in that case.

as it involved an element of discretion, is not open to criticism"); *New Amsterdam Cas. Co.* v. *Estes,* 353 Mass. 90, 95 (1967), quoting with approval *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508 (1947)("Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts . . .").

Assuming jurisdiction[10] and venue are proper, dismissal on the ground of forum non conveniens will rarely be granted; "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *New Amsterdam Cas. Co.* v. *Estes, supra.* See *Universal Adjustment Corp.* v. *Midland Bank, Ltd.,* 281 Mass. 303, 315 (1933)("Generally, under recognized rules of court, where jurisdiction of the person of an alien defendant is obtained or where an alien plaintiff resorts to our courts and secures service on the defendant, the cause of action, although arising in a foreign State, will be considered and adjudicated").

The terms of the Kearsarge-Waghorne contract required the parties to arbitrate any claim in accordance with the rules of the American Arbitration Association. Those rules require the initiation of arbitration in an American Arbitration Association regional office. The Association's regional office with jurisdiction over the States of Maine, New Hampshire, Vermont, Rhode Island and Massachusetts, is located in Boston, and, as a consequence, Kearsarge arbitrated its claim in this Commonwealth. Pursuant to G. L. c. 251, § 16, jurisdiction to confirm the award of the arbitrators lies in "any court of competent jurisdiction of this state." See also G. L. c. 251, § 17. Thus, Kearsarge was not obliged to seek a New Hampshire court to confirm the award. There was no error in the denial of the motion to dismiss.

---

[10] Peerless raises no issue as to jurisdiction. Compare *Carlson Corp.* v. *University of Vt.,* 380 Mass. 102 (1980).

3. *Existence of genuine issues of fact.* Peerless argues that the judge erred in granting summary judgment against it since affidavits filed prior to that ruling disclosed the existence of genuine issues of material fact with respect to the defendant's liability under its performance bond. Specifically, Peerless points to statements contained in affidavits of two of its employees indicating that representatives of Kearsarge had stated that if Peerless took responsibility for the completion of the project, Kearsarge would not seek the $500 a day damages to which the Kearsarge-Waghorne contract entitled it.[11] However, the Peerless bond and the underlying construction contract, read together, required Peerless to arbitrate "[a]ll claims and disputes relating to this [construction] contract" by virtue of the clause in Peerless's bond which made the construction contract "a part of this bond, the same as though fully set forth herein." See *Maine Bonding & Cas. Co.* v. *Foundation Constructors, Inc.*, 105 N.H. 470, 473 (1964). Since Peerless was required to raise "[a]ll claims and disputes" relating to the contract at arbitration,[12] the judge correctly declined to consider this

---

[11] An attorney formerly employed by Peerless in its bond claim department stated in an affidavit: "I was present when the Kearsarge representatives stated that if Peerless would undertake to complete the Kearsarge project, Kearsarge would not pursue a claim for contract liquidated damages. Peerless undertook completion work in reliance on these statements."

The head of Peerless's bond claim department at the time stated: "Kearsarge stated that if Peerless undertook completion of the building, Kearsarge would not seek any so-called penalties that could arise as a result of delays in the completion. Kearsarge stated that the building was over 90% complete and that only about 4 weeks work remained . . . . In reliance on the above statements of Kearsarge, I said that we would agree to commence work promptly by getting the subcontractors creditors back to finish the work. Kearsarge stated that the $500.00 per day so-called penalty clause would not be sought if Peerless commenced the work."

[12] Peerless relies on *Fidelity & Deposit Co.* v. *Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127 (1979), in support of its contention that it should be entitled to introduce evidence and raise defenses, outside of the arbitration proceedings, to prove that no liability exists under its performance bond. In *Fidelity*, where a surety's bond incorporated by reference an arbitration clause in a construction contract, the Court of

claim. *Baystate Medical Center* v. *Blue Cross of Mass., Inc.*, 382 Mass. 485, 487 n.6 (1981). The parties' decision to employ arbitration as the method of dispute resolution must be respected by courts. "[F]requent judicial interference with awards is a paralyzing blow to the healthy functioning of the arbitral process." *Southwestern N.H. Transp. Co.* v. *Durham*, 102 N.H. 169, 176 (1959), quoting from Jones, The Nature of the Court's "Jurisdiction" in Statutory Arbitration Post-Award Motions, 46 Calif. L. Rev. 411, 437 (1958) (grievance procedures).

We believe the New Hampshire courts would hold that Peerless is bound by the award of the arbitrators. Thus, we think that there is no error in the allowance of Kearsarge's motion for summary judgment, and we conclude that the judge did not err in denying Peerless's motion to dismiss on the ground of forum non conveniens.

*Judgment affirmed.*

---

Appeals of New York held that while the surety was bound by arbitration decisions as to disputes under the construction contract, it had not agreed to arbitrate "separate and distinct controversies" that might arise between it and the obligee under the performance bond. *Id.* at 129. Therefore, the court held, the surety was not bound to arbitrate those "possible unrelated differences" which might arise between the surety and the obligee. The factual disputes and defenses Peerless attempts to raise are not "separate and distinct" from the issue of its liability under the terms of the construction contract, but rather arise directly under that contract, and therefore were required to be settled in arbitration.