Travelers Casualty and Surety Company of America, Inc. *v.* Long Bay Management Company.

Travelers Casualty and Surety Company of America, Inc.[1] *vs.* Long Bay Management Company[2] & another.[3]

No. 01-P-1855.

Suffolk. April 8, 2003. - August 7, 2003.

Present: Brown, Jacobs, & Cypher, JJ.

*Contract,* Construction contract, Surety, Bond. *Arbitration,* Surety's obligation. *Surety. Bond,* Construction contract bond. *Practice, Civil,* Consolidation of actions.

A surety was entitled to arbitrate claims arising from a construction contract dispute against the owner of a parcel in a proceeding consolidated with a pending arbitration matter between the owner and a general contractor, where the surety's performance bond incorporated the terms and conditions of the construction contract, which contained an arbitration clause [788-792], and where the circumstances of the case warranted a consolidation order [792].

Civil action commenced in the Superior Court Department on November 29, 2001.

The case was heard by *Allan van Gestel,* J.

*Philip M. Cronin* (*Robert A. McCall* with him) for the plaintiff.

*Glenn H. Haese,* of Colorado (*Scott A. Aftuck* with him) for Long Bay Management Company.

Brown, J. This appeal stems from a construction contract dispute involving a surety, a general contractor, and the owner (or developer) of the parcel. A web of written contracts connects the parties to each other. The question presented is whether the surety is entitled to arbitrate claims against the owner in a proceeding consolidated with a pending arbitration matter

[1]As administrator of Reliance Insurance Company. See note 5, *infra.*
[2]Doing business as Long Bay Builders, Inc.
[3]Massachusetts Housing Finance Agency.

between the owner and contractor. A judge ruled adversely to the surety. We reverse.

1. *Background.* On June 10, 1998, a general contractor, Long Bay Management Company (Long Bay), entered into a written contract with an owner-developer, the Massachusetts Housing Finance Agency (MHFA), to renovate residential housing units in Boston. As the contract required, Long Bay obtained a performance bond to insure completion of its work on the project. A surety, Reliance Insurance Company (Reliance), issued the bond to Long Bay in favor of the MHFA. Work by Long Bay for the initial phase of the project followed.[4]

Subsequently, a quarrel broke out between Long Bay and the MHFA respecting a number of change orders for work to be done by Long Bay and related money matters. Long Bay demanded, and the MHFA agreed, to arbitrate their dispute in accordance with the terms of the construction contract.

By a writing dated January 31, 2001, Long Bay declared the construction contract terminated. Likewise, on February 2, 2001, the MHFA terminated, for cause, Long Bay's right to proceed under the contract. Pursuant to the performance bond, the MHFA called on Reliance to complete the project. Reliance agreed to do so, reserving its rights vis-à-vis the MHFA to recover certain costs to complete the contract and delay damages, as memorialized in a written agreement with the MHFA. Thereafter, on August 22, 2001, Reliance engaged a builder, Bilt-Rite Construction, Inc., to do the work.

In the interim, Reliance transferred the bond to Travelers Casualty and Surety Company of America, Inc. (Travelers), which, as the former's representative (and substitute surety), sought permission to participate in the arbitration by and between Long Bay and the MHFA.[5] Travelers filed a written submission in the pending Long Bay/MHFA arbitration to that effect, based on derivative claims it pressed against the MHFA

[4]Work on the project was to be done in three phases. On August 31, 2000, the project architect issued a certificate of substantial completion for phase I.

[5]Reliance filed for bankruptcy protection, details of which have not been disclosed on this record. Travelers acquired the assets and assumed liabilities of Reliance's surety business on May 31, 2000, which, we are informed, was prior to the bankruptcy filing. Travelers appears as administrator of the surety bond.

to recover damages arising from the completion of the project "if Long Bay is correct that it was not in default of the contract and that MHFA was the party in default."[6]

The rub here is that Long Bay opposed Travelers's request to participate in the arbitration. Though the MHFA had no objection to Travelers's participation,[7] a stalemate ensued, prompting Travelers to file an action in Superior Court for an order to compel the arbitration of its dispute with the MHFA and to consolidate that proceeding with one between Long Bay and the MHFA. Travelers asserts no claim against Long Bay.

By an order entered December 18, 2001, a Superior Court judge declined to grant Travelers the requested relief. The judge concluded there was an insufficient contractual basis to permit Travelers to compel the arbitration. Pursuant to G. L. c. 251, § 18, Travelers now appeals from that order, challenging the judge's interpretation of the bond and construction contract, which (as matter of law) is subject to plenary review.[8] See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973); *Leblanc* v. *Friedman*, 438 Mass. 592, 596 (2003); *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989); *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999).

2. *Discussion.* a. *Arbitration provision.* A surety like Reliance (and now Travelers) is generally obligated to arbitrate a dispute with a contractor or developer, if the performance bond incorporates by reference an underlying construction contract that contains an arbitration clause. See *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 166-168 (1981) (interpreting New Hampshire law); *Powers Regulator Co.* v. *United States Fid. & Guar. Co.*, 7 Mass. App. Ct. 913, 913-914 (1979). The construction contract here has an arbitration provision that states in pertinent part: "Any controversy or Claim

---

[6]In turn, the MHFA lodged a counterclaim against Travelers in that arbitration, alleging Travelers and its principal (Long Bay) were liable under the construction contract for damages due to defective work and delay costs resulting from Long Bay's default and the surety's failure to act.

[7]Summonsed as a defendant in the Superior Court action below, the MHFA has elected not to file a brief in this appeal.

[8]With the proviso that there be no disputed facts that bear upon such interpretation.

58 Mass. App. Ct. 786 (2003)                    789

Travelers Casualty and Surety Company of America, Inc. *v.* Long Bay Management Company.

arising out of or related to the [construction] Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."[9]

The bond, on the other hand, does not contain an arbitration clause, but more generally provides, "The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, *which is incorporated herein by reference*" (emphasis added).[10]

Long Bay argues (as it did before the Superior Court) that the language of the bond, quoted above, identifies the work Long Bay and Reliance must perform but does not otherwise incorporate the terms and conditions of the construction contract.

Acting on Travelers's application, the Superior Court judge accepted Long Bay's argument, ruling that the "Construction Contract [was] incorporated solely for its use as a point of reference for understanding what was to be *performed* thereunder" (emphasis original).

We think that the judge erred in construing the incorporation by reference language in the bond as limited in scope to work to be performed under the contract.[11] To insist on such an interpretation, one must lose sight of the interplay between the construction contract and the bond, and ignore governing case law in this Commonwealth.

The language of the bond — "which is incorporated herein by reference" — means just that: the construction contract, as the clearly identified antecedent, is thus made a part of the bond itself. Contrast *Chicopee Concrete Serv., Inc.* v. *Hart Engr. Co.*, 20 Mass. App. Ct. 315, 320 (1985), *S.C.*, 398 Mass. 476, 478

---

[9]The term "Claim" is defined in the construction contract as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the [construction] Contract."

[10]There is no room to doubt that the "Construction Contract," as referred to in the bond, is anything other than the June 10, 1998, agreement between Long Bay and the MHFA.

[11]The First Circuit also rejected such a proposition in *Commercial Union Ins. Co.* v. *Gilbane Bldg. Co.*, 992 F.2d 386, 389 n.4 (1st Cir. 1993).

(1986).[12] To restrict, as Long Bay would have it, the incorporation by reference language in the bond to "work" or "performance," as opposed to the contract in its entirety, does violence to the bond's terms.

Further, a plain reading of the bond as a whole reveals its integral relationship to the construction contract. For example, where, as here, the owner has formally terminated the contractor's right to proceed on the contract, the surety has an option to undertake to complete the work. Reliance elected to do so, and in that event, the bond provides the "responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract" and likewise for the duties owed by the owner to the surety. This provision has no meaning unless the terms and conditions of the construction contract are in fact incorporated into the bond itself.[13] It is beyond dispute that one of the responsibilities the contractor (Long Bay) assumed toward the owner was to arbitrate all disputes arising from the contract.[14]

Our interpretation is consistent with case law in this

---

[12]In *Chicopee,* we concluded that the terms in a subcontract providing that the subcontractor was to "[f]urnish all materials and equipment required to perform the 'SCOPE OF WORK' . . . in strict accordance with plans and specifications [of the prime contract], including . . . [the] General Terms and Conditions," incorporated only those terms of the prime contract that were "germane to the work to be performed by the subcontractor in behalf of the contractor." 20 Mass. App. Ct. at 320. The Supreme Judicial Court agreed, and noted that it did not view our decision as "announcing a rule . . . that a provision of a general contract will be included in a subcontract only if it is specifically referred to as a condition of the subcontract." 398 Mass. at 478. Rather, the court explained, "Unless incorporation by general reference is explicitly rejected by some statute or regulation, incorporation by a clearly stated general reference will suffice." *Ibid.*

[13]The parties here used a standard construction contract and bond form prepared by the American Institute of Architects (AIA). The AIA form documents "have virtually become scripture in the construction industry." Franks & Heacock, Arbitration and the Contract Surety: Inclusion and Preclusion, 32 Tort & Ins. L.J. 977, 980 n.18 (1997). Not surprisingly, the question we face is a common one in construction disputes. *Id.* at 981. We are mindful that the incorporation by reference technique serves a practical purpose to avoid the "repetitious inscription of terms and conditions that have already been set forth elsewhere." Acret, Construction Arbitration Handbook § 5.05, at 137 (1985).

[14]Long Bay argues that art. 9 of the bond, which provides in part that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in

Commonwealth. In *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162 (1981), the court faced the reverse situation from that presented here. There, a surety argued that it ought not be bound by the arbitration clause in the underlying construction contract, which had, by reference, been "made a part of" the performance bond. *Id.* at 164, 167. Rejecting that argument, the court, applying New Hampshire law, ruled that "where the parties to a contract have agreed to resolve their disputes by arbitration, the surety who guarantees the performance of the contract will be likewise bound." *Id.* at 167.[15] The court noted that, since the surety had adopted by reference the arbitration agreement in the construction contract, the absence of a like provision in the bond itself did not free the surety from its obligations under the construction contract. *Id.* at 167 n.8.[16]

Our decision in *Powers Regulator Co.* v. *United States Fid. & Guar. Co.*, 7 Mass. App. Ct. 913 (1979), also provides guidance. In *Powers*, an arbitration provision in a subcontract had been incorporated by reference in the bond. We concluded the surety "agreed implicitly to that method of determining the contractual liability of its principal (the subcontractor)" and the surety was bound by the arbitration result, absent a showing of fraud or collusion. *Id.* at 914. See *Massachusetts Elec. Sys., Inc.* v. *R.W. Granger & Sons*, 32 Mass. App. Ct. 982, 983 (1992) (surety bound by arbitration clause in prime contract).[17] Though it cites to case law from other jurisdictions, Long Bay makes no

any court of competent jurisdiction," cuts off any right of the surety to arbitrate. That contention is overdrawn. Article 9 does not prohibit or restrict the parties' right to arbitrate, and is not otherwise inconsistent with the arbitration provision incorporated into the bond.

[15]Similarly, where a subcontractor's performance bond incorporated the subcontract "by reference made a part hereof," and the subcontract incorporated a prime contract that contained an arbitration clause, the United States Court of Appeals for the First Circuit ruled that, by virtue of this chain of incorporation, the subcontractor's surety could compel the general contractor to arbitrate disputes under the subcontractor's bond. *Commercial Union Ins. Co.* v. *Gilbane Bldg. Co.*, 992 F.2d at 387-389.

[16]There is no practical difference between the language in the present appeal ("incorporated herein by reference") and the critical language in *Kearsarge* ("made a part of"). It follows that the court's reasoning in *Kearsarge* is equally applicable to this appeal.

[17]With few exceptions, Federal courts that have addressed the same question have ruled in like fashion. See, e.g., *J & S Constr. Co.* v. *Travelers*

mention of *Kearsarge*, *Powers*, or *R.W. Granger* in its appellate brief. We see no reason not to apply the reasoning articulated in those three Massachusetts decisions.

The incorporation by reference of the construction contract, including the arbitration clause, into the bond itself has the effect of providing Travelers the right to compel arbitration of a claim under the contract as against the MHFA. This is in line with the general rule that arbitration is a matter limited to parties who have agreed, by contract, to avail themselves of such a remedy. Contrast *Ladd* v. *Scudder Kemper Invs. Inc.*, 433 Mass. 240, 246 (2001); *Unisys Fin. Corp.* v. *Allan R. Hackel Org., Inc.* 42 Mass. App. Ct. 275, 280-281 (1997).

Lastly, a suggestion, offered by Long Bay, that Travelers made no written demand to arbitrate, is not borne out by the record. Travelers, in writing, did make demand against the MHFA for damages in completing the project, and for the latter's alleged breach respecting phase I. Given that the MHFA filed a counterclaim against Travelers and raised no objection whatsoever to Travelers's request to arbitrate, this issue is, if anything, but a quibble.

b. *Consolidation.* Pursuant to G. L. c. 251, § 2A, a party may apply to the Superior Court for an order to consolidate one arbitration proceeding with another. The circumstances here warrant a consolidation order. The Long Bay/MHFA arbitration and the MHFA/Travelers dispute arise from the very same contract and involve common issues of fact and law.[18] Long Bay has not shown it would be unduly prejudiced by consolidating the proceedings.

The Superior Court's order of December 18, 2001, is vacated,

---

*Indem. Co.*, 520 F.2d 809, 810 (1st Cir. 1975); *Exchange Mut. Ins. Co.* v. *Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *Commercial Union Ins. Co.* v. *Gilbane Bldg. Co.*, 992 F.2d at 388-389; *Kvaerner ASA* v. *Bank of Tokyo-Mitsubishi, Ltd., New York Branch*, 210 F.3d 262, 266-267 (4th Cir. 2000). But see *AgGrow Oils, L.L.C.* v. *National Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001).

[18]The construction contract allows for consolidation where there is a common question of fact or law, and permits the inclusion of a party in addition to the owner and contractor where that party's presence is required if complete relief is to be accorded in arbitration. That is the case here.

and the case is remanded to Superior Court for further proceedings consistent with this opinion.

*So ordered.*