SCAC TRANSPORT (USA) INC. and United Nations Development Programme Office for Projects Execution, Plaintiffs,

v.

S.S. "DANAOS," her engines, boilers, etc.,

and

Big Lift USA, Inc., Big Lift Shipping Company (N.A.) Inc. d/b/a Big Lift and Danais Shipping Company, Defendants–Appellants–Cross–Appellees,

DANAIS SHIPPING COMPANY, Third–Party Plaintiff,

v.

UNIVERSAL MARITIME SERVICE CORP., Third–Party Defendant–Appellee–Cross–Appellant.

Nos. 135, 187, Dockets 87–7386, 87–7414.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1987.

Decided April 25, 1988.

Richard J. Reisert, New York City (Terry L. Stoltz, Burlingham Underwood & Lord, of counsel), for defendants-appellants-cross-appellees.

William E. Bell, New York City (Celestino Tesoriero, Grainger, Tesoriero & Bell, of counsel), for third-party defendant-appellee-cross-appellant.

Before CARDAMONE, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

This appeal and cross-appeal concern an indemnity claim arising out of an accident during the loading of a truck on board the S.S. DANAOS. The principal issue is whether a stevedore may be vouched into an arbitration without its consent.

After the vessel's owner, Danais Shipping Company ("Danais"), settled with the cargo interests, Danais and the charterer, appellants-cross-appellees Big Lift USA, Inc. and Big Lift Shipping Company (N.A.) Inc. (collectively "Big Lift"), submitted their dispute over responsibility for the accident to arbitration in London, as required by their charter party. Big Lift then sought to have the stevedore, appellee-cross-appellant Universal Maritime Service, Corp. ("Universal"), assume its defense in the London arbitration, which Universal declined to do. After the arbitrators ruled in favor of Danais, Big Lift sought indemnification from Universal on the basis of the arbitrators' finding that Universal had been negligent in unloading the cargo. Judge Keenan denied Big Lift's motion for summary judgment on the ground that a party who had not consented to be bound by arbitration cannot be vouched into such a proceeding. *SCAC Transport (USA) Inc. v. S.S. Danaos,* 578 F.Supp. 327, 331 (S.D.N.Y.1984). After trial, the district court ruled that Universal had been negli-

gent and must indemnify Big Lift. The court did not, however, award Big Lift all of its costs and attorney's fees incurred as a result of the London proceeding or the preaward interest and attorney's fees awarded to Danais by the London arbitrators.

Big Lift now appeals from both the denial of summary judgment and the denial of full indemnity. In its cross-appeal, Universal claims that the district court's finding of liability was clearly erroneous and that the district court erred in awarding to Big Lift any of its costs incurred as a result of the London proceeding. Because the district court erred by denying Big Lift's motion to bind Universal to the results of the London arbitration after Universal had been properly vouched into that proceeding and by not awarding Big Lift full indemnity, the award to Big Lift must be modified. The modification should include the $129,393.42 in interest actually paid by Big Lift to Danais pursuant to the arbitration award and $77,319.58 for costs and attorney's fees associated with the London arbitration plus prejudgment interest on those sums from the date of actual payment by Big Lift at nine percent, the rate set by the district court. Universal's cross-appeal is therefore without merit.

## BACKGROUND

On December 23, 1977, the vessel S.S. DANAOS was loading cargo at Port Newark, New Jersey. The vessel, owned by Danais, was under time charter to Big Lift, which had contracted with Universal for stevedoring services. That morning, the vessel's Stulken Boom collapsed when a pin in a winch block failed during the loading of a water tank truck bound for West Africa. The truck, the boom and related parts of the vessel were damaged.

On December 22, 1978, the truck's owners, SCAC Transport (USA) Inc. and the United Nations Development Programme Office for Projects Execution (collectively "SCAC"), commenced this action in admiralty in the Southern District of New York against the DANAOS in rem, Danais and

Big Lift. Danais cross-claimed against Big Lift for indemnity of any amounts for which it might be held liable. Danais also brought a third-party claim against Universal. Big Lift subsequently brought a cross-claim against Universal for any amounts for which it might be required to indemnify Danais, while Universal filed counterclaims against Danais and Big Lift alleging that all damages were caused by their failure to provide a seaworthy vessel.

Prior to discovery, Danais settled SCAC's claim for $10,000. The remaining claims in this action were then stayed pending arbitration between Danais and Big Lift. Clause 17 of the charter party between Danais and Big Lift provided that "any dispute" between them would be arbitrated in London. Universal was not a party to this agreement.

On September 30, 1980, Big Lift tendered the defense of the London arbitration to Universal, stating that:

> PLEASE TAKE NOTICE that an arbitration in London has been instituted by Danais Shipping Company against Big Lift Shipping Company (N.A.) Inc. to recover damages including indemnity for sums paid to the plaintiff herein, offhire and damage to the vessel allegedly resulting from negligent operation of a winch during cargo operations on or about December 23, 197[7], at which time the winch was being operated by your personnel. Demand is hereby made upon you, under your contract with Big Lift Shipping Company (N.A.) Inc., and as the party with exclusive knowledge of grounds for defense, to appear, defend and indemnify Big Lift Shipping Company (N.A.) Inc. from the results of said arbitration.
>
> If you refuse or neglect to honor this demand, you will be precluded from objecting to the outcome of said arbitration proceeding whether terminated by settlement or by an award, and Big Lift Shipping Company (N.A.) Inc. will claim over against you for any and all sums which it may be required to pay to Danais Shipping Company, or which they may reasonably pay in settlement of the London

arbitration, and/or all disbursements, expenses and costs incurred in defending the London arbitration, including attorneys' fees.

Universal acknowledged receipt of the notice but refused to participate in the arbitration.

On August 11, 1982, the London arbitrators ruled in favor of Danais, finding that the "proximate cause" of the accident was the stevedore's negligence and that the accident was not the result of "any defect in any part of the [vessel's] equipment." Holding the charterer liable for its stevedore's negligence as required by the charter party, the arbitrators awarded Danais $74,293.61 for repair to the vessel, and $75,245.63 for withheld charter hire. Interest was awarded on the sum of these amounts ($149,539.24) at the rate of sixteen percent from March 1, 1978 through August 11, 1982, the date of the arbitration award. This preaward interest totalled $106,455.54. Danais was also awarded the $10,000 paid in settlement of SCAC's claim, and interest on that amount at fourteen percent ($3,118.36) from May 20, 1980, the date this sum was paid, to August 11, 1982. Postaward interest at a twelve percent rate totalling $19,819.52 was awarded on $269,-113.14 ($159,539.24 (award) + $109,573.90 (preaward interest)) from August 11, 1982 until March 23, 1983, the date Big Lift paid Danais on the arbitration award. Finally, the London arbitrators ruled that Big Lift would have to bear the costs and fees of Danais' London solicitors and the costs of the arbitration, which totalled $32,822.56 when paid on March 23, 1983.

On September 24, 1982, Big Lift sent Universal a copy of the London arbitrators' award, explaining that an "appeal" could be had in the form of a "special case" before the Commercial Court in London. Moreover, Big Lift again tendered the defense of the claim to Universal, stating that:

> We hereby again tender defense of the claim and prosecution of the Special Case in the Commercial Court to Universal Maritime Service Corp. If Universal chooses to decline this tender, the action

in London will be discontinued and our client will seek to enforce its remedies against Universal in the action pending in New York.

After Universal declined to assume defense of the claim and prosecution of the special case, Big Lift instructed its London solicitors to terminate the appeal.

The litigation returned to the Southern District of New York when, after removing the case from the district court's suspense docket, Danais sought summary dismissal of Universal's counterclaims against it, and Big Lift sought summary indemnification for the amounts it had paid to Danais under the arbitration award. Both parties claimed that the arbitrators' findings were dispositive of the factual issues raised in the case—the cause of the collapse of the Stulken Boom—because Universal had been vouched into that proceeding. Judge Keenan disagreed and denied both motions. He held that Universal was not estopped from contesting factual issues decided by the London arbitrators because it did not participate in or consent to be bound by that tribunal. *SCAC Transport (USA) Inc.*, 578 F.Supp. at 331.

A six-day bench trial was subsequently held on Big Lift's indemnity claim against Universal and Universal's counterclaim against Danais Shipping. The cause of the collapse of the Stulken Boom was the central issue at trial. On March 9, 1987, Judge Keenan found that the boom collapsed because Universal's winch operator failed to maintain an adequate safety margin between the purchase blocks and drew the two blocks together, that the Stulken Boom was not negligently designed, and that Danais was not negligent in the maintenance of the boom. These findings were identical to the findings of the London arbitrators. Judge Keenan then dismissed Universal's counterclaim against Danais, an order that has not been appealed. He further held that Big Lift was entitled to indemnity from Universal because Universal had breached its implied warranty to Big Lift in handling the equipment supplied by the vessel's owner. Indemnity was awarded on the following amounts:

(1) $74,293.61 for repairs with interest at 9% per annum from March 23, 1983 of $26,800.63;

(2) $75,245.63 in withheld charter hire with interest at 9% per annum from March 23, 1983 of $27,144.10;

(3) Settlement of SCAC cargo claim of $10,000.00 plus interest at 9% per annum from March 23, 1983 of $3,634.52;

(4) Counsel fees of $25,319.95 plus interest at 9% per annum from December 30, 1983 of $7,367.08;

(5) The costs of fuel of $9,089.00 plus interest at 9% per annum from January 21, 1978 of $7,530.18;

(6) The costs of survey fees in Dakar of $830.03 plus interest at 9% per annum from January 21, 1978 of $687.65.

This award included principal of $194,778.22 plus interest of $73,164.16 for a total amount of $267,942.38.

Judge Keenan declined to award Big Lift the London attorney's fees of Danais, Big Lift's costs and attorney's fees in the London arbitration on the ground that these amounts, totalling $77,319.58, were "beyond what Universal could reasonably contemplate when hired as a stevedore by Big Lift." He further denied Big Lift's claim for recovery of all the interest actually paid to Danais under the arbitration award ($129,393.42), although prejudgment interest on those same principal sums was granted from March 23, 1983, the date Big Lift satisfied the arbitration award.

## DISCUSSION

██ We turn first to the question, raised by Big Lift's motion for summary judgment, of whether Universal is bound by the London arbitration award. Under the common-law practice of voucher, a defendant (or indemnitee) in an action who seeks indemnification from a third party (or indemnitor) serves a notice to defend on that party. This notice informs the indemnitor of the pendency of the action against the defendant and offers the indemnitor the opportunity to appear and defend the action. If the indemnitor accepts this opportunity, it becomes a party to the action and is of course bound by the result. If

the indemnitor refuses to assume the defense, the defendant, if unsuccessful in the original action, may bring a separate action against the indemnitor to enforce indemnification. In this separate action, the indemnitor can dispute the existence and scope of any requirement of indemnity. *See Humble Oil & Ref. Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 735 (3d Cir.1971) (in separate indemnification action by shipowner against stevedore, stevedore not bound by results of prior litigation where it had lesser duty to injured third party than did shipowner). The indemnitor is precluded, however, by principles of or analogous to collateral estoppel, from relitigating issues decided in the original action, notwithstanding its refusal to defend in that action. *See Washington Gas Light Co. v. District of Columbia*, 161 U.S. 316, 329–30, 16 S.Ct. 564, 569, 40 L.Ed. 712 (1896); *Aetna Life Ins. Co. v. Maxwell*, 89 F.2d 988, 991 (4th Cir.1937); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[9], at 247–48 (2d ed. 1984); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4452 at 439–41 (1981).

Although vouching has been largely supplanted by modern impleader rules, *see, e.g.*, Fed.R.Civ.P. 14, it remains a valid practice under certain circumstances. *See, e.g., Travelers Indemn. Co. v. Evans Pipe Co.*, 432 F.2d 211, 213 (6th Cir.1970); *Hessler v. Hillwood Mfg. Co.*, 302 F.2d 61, 62 (6th Cir.1962) (per curiam); *West Indian Co. v. S.S. Empress of Canada*, 277 F.Supp. 1, 2–3 (S.D.N.Y.1967). As does impleader, vouching serves to eliminate the expense and delay of relitigation, protects the indemnitee against the risk of inconsistent results, and forces the indemnitor, who may be best able to defend the action, to bear the burden of defense.

■ Common-law vouching is a superfluous procedure where impleader is available. *See* 18 C. Wright, A. Miller & E. Cooper, *supra*, at 445–46 ("Vouching need be preserved only for cases in which lack of personal jurisdiction or other limitations make impleader unavailable."); *Humble Oil & Ref. Co. v. Philadelphia Ship Mainte-*

*nance Co.*, 444 F.2d at 735 & n. 15. Impleader is of course superior to vouching because it forces the indemnitor to participate as a party and thus avoids delay that may result when an indemnitor declines to be vouched into an action.

■ Where vouching is used but the indemnitor declines to assume the defense of an action, the indemnitor is bound by the result only when its interests have been adequately represented in the original action by the indemnitee. *See Restatement (Second) of Judgments* § 57 (1982). Also, as is the case with offensive collateral estoppel, it would be "unfair" to preclude a vouched-in party from litigating issues decided in the prior action if "procedural opportunities" available to the vouched-in party in the subsequent action "might be likely to cause a different result." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–32, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). In determining the preclusive effect of an ignored vouching-in notice, therefore, a court adjudicating a separate action for indemnification must look to whether impleader was possible in the prior action. If impleader was not available, the court should then scrutinize whether the indemnitee adequately represented the indemnitor's interests in the prior action, and whether procedural opportunities in the present action might cause a different outcome than in the prior action. In the separate action to enforce indemnification, the district court must of course have personal jurisdiction over the indemnitor. *See West Indian Co.*, 277 F.Supp. at 3. An indemnitor may also dispute whether the notice to defend was adequate. *See* J. Moore, J. Lucas & T. Currier, *supra*, at 251 & n. 12.

In the present case, Judge Keenan ruled that the vouching notice served in the London arbitration had no preclusive effect. *SCAC Transport (USA) Inc.*, 578 F.Supp. at 331. The basis for his decision was that arbitration did not provide the procedural safeguards available in the judicial system and that Universal had not consented to the arbitration. *Id.* at 330–31. We disagree.

■ First, we are not convinced that the procedural differences between arbitration

and the judicial process preclude vouching. Arbitration is an especially important and efficient means of dispute resolution in the maritime field, *see* Feinberg, *Maritime Arbitration and the Federal Courts*, 5 Fordham Int'l L.J. 245 (1982), and "has largely taken the place of litigation" in disputes arising out of charter parties. G. Gilmore & C. Black, *The Law of Admiralty* 196 (2d ed. 1975). It is not at all clear that the procedures afforded by arbitration are so invariably different from those afforded by courts that the indemnitors in maritime cases are likely to be unfairly prejudiced if bound by the results of arbitration. In the instant case, for example, the arbitrators were experienced in maritime matters, received extensive evidence, including the live testimony of the Universal longshoremen who operated the boom at the time of the accident, and rendered a detailed, eleven-page opinion that was reviewable by the Commercial Court in London. *Cf. Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985) (arbitral decision can have collateral estoppel or res judicata effect when arbitration "affords basic elements of adjudicatory procedure"); *Restatement (Second) of Judgments* § 84 and comment c (1982). Indeed, Universal has not demonstrated any prejudice it would have suffered by reason of an absence of designated procedural safeguards in the London arbitration. Absent a particularized showing of harm, procedural differences between arbitration and court adjudication are not a ground for denying a preclusive effect to the vouching-in notice. (Universal makes no claim that Big Lift failed to represent its interests adequately in the London arbitration.)

■ Second, we are also not convinced that the usual rule that a party will not be bound by arbitration absent its consent necessarily requires that a party consent before it may be vouched into an arbitration. *SCAC Transport (USA) Inc.*, 578 F.Supp. at 330. In the absence of vouching, a party would have to consent to the exercise of a court's jurisdiction in order to be bound by the court's decrees if the court lacked personal jurisdiction. Likewise, in the absence of vouching, a party would have to consent before being bound by arbitration. A party can, however, be vouched into a judicial proceeding when there is neither personal jurisdiction nor consent. *See, e.g., Travelers Indem. Co. v. Evans Pipe Co.*, 432 F.2d at 212–13. For example, had plaintiffs commenced their action by arresting the DANAOS in Senegal, West Africa (where the vessel had been repaired), and had Big Lift been made a party to that action, Big Lift might have vouched Universal into the Senegalese action—assuming of course that adequate representation and adequate procedural opportunities were present—even though Senegalese courts might have no personal jurisdiction over Universal.

■ Vouching is permitted in litigation for reasons of efficiency. The efficiencies afforded by vouching are as great in the case of maritime arbitration as in litigation, however, and we perceive no reason to distinguish between the two processes for purposes of vouching because of a lack of consent to arbitration. We emphasize that we are dealing with an area in which arbitration is the common method by which disputes are resolved. Stevedores are thus well aware that charter parties contain arbitration clauses to which the stevedores' potential indemnitees are bound. Absent a particularized showing of prejudice, there is no reason to subject parties to maritime transactions to multiple proceedings to resolve a single dispute. One trial, whether before arbitrators or a court, is enough. Relitigation of disputes in several forums raises the costs of maritime transactions to all parties for no useful purpose and wastes judicial resources as well. There is simply no reason why a garden-variety maritime accident like that in issue should entail multiple trials and take a decade to be resolved. We therefore hold that, absent a particularized showing of prejudice, a stevedore may be vouched into arbitration under a charter party by a charterer where the stevedore is the charterer's indemnitor.

■ Universal is thus bound by the London arbitrators' finding that Universal's negligence caused the accident. We

need not consider, therefore, that portion of Universal's cross-appeal in which it claims that the district court's findings on liability were clearly erroneous.

The existence and scope of Universal's indemnity obligation to Big Lift is beyond dispute.[1] A stevedore must indemnify a shipowner or charterer to whom it has contracted to provide stevedoring services for losses that party sustains from the stevedore's breach of its warranty of workmanlike service. *See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 318–20, 84 S.Ct. 748, 750, 11 L.Ed.2d 732 (1964); *Saks Int'l Inc. v. M/V Export Champion*, 817 F.2d 1011, 1014 (2d Cir.1987); *Demsey & Assocs. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir.1972). Having tendered defense of the arbitration to Universal, Big Lift only had to prove its potential liability to Danais to bind Universal to the results of the London arbitration. *Cf. Atlantic Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 113 (2d Cir.) (where party seeking indemnity has settled with plaintiff after giving potential indemnitor notice and an opportunity to defend, only potential liability to plaintiff must be shown), *cert. denied*, —— U.S. ——, 107 S.Ct. 75, 93 L.Ed.2d 31 (1986). In light of the arbitration award holding Big Lift liable to Danais for Universal's negligence, Big Lift had clearly made such a showing at the time it moved for summary judgment.

On appeal and cross-appeal, both parties contend that Judge Keenan's indemnity award was in error. Big Lift claims that he erred by not awarding $129,393.42 in interest it paid to Danais pursuant to the arbitration award and $77,319.58 in costs and attorney's fees associated with the London arbitration plus prejudgment interest on these amounts. Universal claims that he erred in awarding Big Lift the attorney's fees of its New York counsel totalling $25,319.95.

Indemnity, by definition, entails the "shifting of responsibility" for any losses "from the shoulders of one person to another." W.P. Keeton, D. Dobbs, R.E. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts*, § 51, at 344 (5th ed. 1984). The Sixth Circuit correctly described indemnity in admiralty as follows:

> We believe that an admiralty indemnity claim is more analogous to a property damage claim since the amount at issue has been liquidated. Under such circumstances, the only question to be determined at trial is which party should bear the loss. If it is determined that a third party was obligated to pay, that individual should be required to reimburse the party who carried its burden absent peculiar circumstances.

*Oglebay Norton Co. v. CSX Corp.*, 788 F.2d 361, 368 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 173, 93 L.Ed.2d 109 (1986). Moreover, it is clear that indemnity in admiralty includes litigation expenses. *See, e.g., Massa v. C.A. Venezuelan Navigacion*, 332 F.2d 779, 782 (2d Cir.), *cert. denied*, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed. 2d 186 (1964); *Nicroli v. Den Norske Afrika-OG*, 332 F.2d 651, 656 (2d Cir.1964). *But see Demsey & Assocs. v. S.S. Sea Star*, 500 F.2d 409, 411 (2d Cir.1974) (upholding denial of attorney's fees where most of defendants' legal fees were expended on claims by or against other defendants, and unprecedented complexity of the lawsuit made indemnification "unconscionable and a gross miscarriage of justice"). We only recently stated that "a stevedore is obligated to indemnify the shipowner for *any* loss incurred because of the stevedore's breach of its warranty of workmanlike service, and that the obligation extends to the litigation expenses incurred by the shipowner in defending

---

1. In *Humble Oil & Ref. Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 735 (3d Cir. 1971), the Third Circuit refused to accord preclusive effect where a shipowner tendered defense of an action brought by an injured longshoreman to the stevedore who declined to enter and defend. Thereafter, the shipowner brought a separate action for indemnification against the stevedore. The court declined to accord preclusive effect to the result of the longshoreman's action because the liability of the shipowner and the liability of the stevedore were not "coextensively comprehensive." *Id.* at 730. *Humble Oil* is also distinguishable on the ground that impleader was available. *Id.* at 733–34.

*any* suit brought against him as a result of such a breach." *Sak's Int'l,* 817 F.2d at 1014 (emphasis added). Similarly, courts have held that an indemnity award in admiralty should include any prejudgment interest paid by the indemnitee. *See Seal Offshore, Inc. v. American Standard, Inc.,* 777 F.2d 1042, 1045 (5th Cir.1985); *Central Rivers Towing v. City of Beardstown,* 750 F.2d 565, 577 (7th Cir.1984).

■ In the instant case, Judge Keenan declined to award Big Lift its costs in the London arbitration, including fees paid to its London solicitors or the attorney's fees awarded to Danais by the arbitrators. We believe it was error not to award those amounts. Moreover, as the Fifth Circuit stated in *Odd Bergs Tankrederi A/S v. S/T Gulfspray,* 650 F.2d 652, 654 (5th Cir. Unit B 1981), "[A]n indemnitor, if 'vouched in' by the indemnitee, may appear and defend the action rather than rely on the indemnitee's efforts. The indemnitor may not evade the costs of the defense by permitting the indemnitee to continue to represent its interests in the action." (citations omitted). Given the lack of evidence that the amounts paid by Big Lift for its costs and fees were unreasonable and the fact that Big Lift was made to pay Danais' attorney's fees by the arbitration award, Universal must indemnify Big Lift for those amounts.

■ The district court's decision not to award Big Lift the $129,393.42 in interest it paid to Danais pursuant to the arbitration award was also error. This interest, once awarded to Danais by the arbitrators, became part of Big Lift's fixed damages. As such, it was not prejudgment interest that the district court could award as a matter of discretion. The selection of an interest rate by the arbitrators is also outside the legitimate review of the district court.

## CONCLUSION

We therefore reverse the district court's denial of summary judgment and order that the award be modified to include the $129,393.42 in interest actually paid to Danais pursuant to the arbitration award and $77,319.58 for costs and attorney's fees associated with the London arbitration plus prejudgment interest on those amounts, at the nine percent rate set by the district court, from the dates Big Lift paid.