## C & I Steel, LLC *vs.* Travelers Casualty and Surety Company of America.

No. 06-P-851.

Middlesex. April 2, 2007. - November 6, 2007.

Present: Grasso, Brown, & McHugh, JJ.

*Arbitration,* Award. *Bond,* Construction contract bond. *Damages,* Punitive.

A Superior Court judge erred in confirming an arbitration award including
punitive damages against the defendant, the surety on a construction pay-
ment bond issued by the principal construction company to a town, where,
by its terms, the bond did not cover punitive damages [657-659]; further,
where the defendant was not a party to the arbitration, there was no arbitration
award against it to be confirmed [659-663]. Brown, J., dissenting.

Civil action commenced in the Superior Court Department on
June 3, 2003.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion
to confirm an arbitration award.

*Bradford R. Carver* for the defendant.

*Rory FitzPatrick* (*Mark E. Haddad* with him) for the plaintiff.

*John P. Connelly & Terri L. Pastori,* for Surety & Fidelity
Association of America, amicus curiae, submitted a brief.

McHugh, J. Travelers Casualty and Surety Company of
America (Travelers), the surety on a construction payment bond,
appeals from a judgment entered after a Superior Court judge
confirmed an arbitration award. In confirming the award, the
judge ordered entry of judgment against Travelers and Peabody
Construction Company, Inc. (Peabody), Travelers' principal,
both for contract and for punitive damages. Travelers contends
that it was not a party to the arbitration and, as a consequence,
there was no award against it to be confirmed. Travelers also
contends that its obligations under the payment bond do not

include payment of punitive damages.[1] We think Travelers is correct and, therefore, reverse.

1. *Background.* On January 30, 2002, the town of Westford awarded Peabody a contract for construction of the Westford Middle School at Stony Brook Center (project). The contract and G. L. c. 149, § 29, required a payment bond, which Peabody obtained from Travelers in the penal sum of $22,411,590, the full value of the contract.[2] Under the terms of the bond, Peabody, as principal, and Travelers, as surety, jointly and severally bound themselves "to the owner [Westford] to pay for labor, materials and equipment furnished for use in the performance of the [c]onstruction [c]ontract." The bond defined the construction contract as the "agreement between the [Town] and [Peabody] . . . including all [c]ontract [d]ocuments and changes thereto."

Peabody thereafter entered into a written subcontract with C & I Steel, Inc. (C & I), for performance of the structural steel work the project required. The subcontract, valued at $1,460,000, contained a broad arbitration clause under which Peabody and C & I agreed that, at Peabody's election, "[a]ll claims, disputes, and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration."[3]

As work under the subcontract proceeded, Peabody and C & I had numerous disputes and disagreements about such things as extra work, backcharges and delay. Ultimately, they reached an impasse. At that point, C & I commenced this action in the Superior Court against Peabody, Travelers, and the architect, Drummey Rosane Anderson, Inc. Four counts of C & I's complaint asserted claims against Peabody for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, and violation of G. L. c. 93A. Two counts asserted claims against

---

[1]We acknowledge the amicus curiae brief submitted by The Surety & Fidelity Association of America.

[2]The parties executed the 1984 edition of the standard form payment bond issued by the American Institute of Architects (AIA Document 312).

[3]More precisely, the subcontract gave Peabody the sole right to choose litigation or arbitration for resolution of any claim valued, as here, in excess of $25,000. Claims valued at $25,000 or less required arbitration under all circumstances.

Travelers, one alleging that Travelers was "liable under the payment bond to secure and satisfy payment for the work performed by C & I" and had failed to do so, and the second claiming that Travelers's failure to pay C & I amounted to a knowing and wilful violation of G. L. c. 93A.

Invoking the subcontract's arbitration clause, Peabody moved to stay judicial proceedings and compel arbitration. Travelers simultaneously filed a separate motion for a stay of what it described as C & I's premature action pending conclusion of binding arbitration. In its motion, Travelers asserted, among other things, that its liability was derivative of Peabody's. C & I filed a partial opposition, seeking freedom only to proceed with its action against the architect. A Superior Court judge allowed both motions to stay but, in accordance with C & I's request, allowed the action against the architect to proceed.[4] Significantly, in their motion and opposition papers, Peabody, Travelers, and C & I all claimed that the governing arbitration clause was contained in Peabody's subcontract with C & I.

After the stay was in place, C & I filed a demand for arbitration with the American Arbitration Association. The demand named Peabody alone and sought arbitration only of the four claims C & I had asserted against Peabody in the Superior Court complaint, i.e., the claims for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, and Peabody's alleged violation of G. L. c. 93A. C & I's demand did not name Travelers as a respondent nor did it assert any claims involving Travelers' own alleged acts or omissions.

The arbitration hearing proceeded over two days before a single arbitrator. Peabody, represented by the attorney who had represented both Peabody and Travelers in the Superior Court proceedings, participated fully. Travelers knew of the arbitration but did not seek to participate. Following the hearing, the arbitrator issued an award in favor of C & I and against Peabody, and broke down the award into ten separate elements. Those elements fit into three general categories, i.e., contract damages amounting to $313,439.54, double contract damages, or $626,879.08, for violation of c. 93A and breach of the covenant

[4]By agreement, C & I's claims against the architect were later withdrawn.

656           70 Mass. App. Ct. 653 (2007)

C & I Steel, LLC *v.* Travelers Casualty and Surety Company of America.

of good faith and fair dealing, and interest, counsel fees and other sundries totaling $268,950.13. In all, the award amounted to $1,209,268.75.

At that point, C & I returned to Superior Court seeking confirmation of the entire award against both Peabody and Travelers. Peabody filed no opposition. Insofar as is here material, Travelers opposed the motion to the extent that the award contained punitive damages or other derivatives of the arbitrator's conclusion that Peabody had violated the covenant of good faith and fair dealing and G. L. c. 93A. In its opposition, Travelers argued broadly that a surety is not liable for punitive damages assessed against its principal and, more narrowly, that payment for punitive damages was not an obligation it had undertaken in the bond.

A Superior Court judge rejected those arguments and confirmed the entire award against Travelers. Although he acknowledged that the award contained both contract and "bad faith" damages, the judge reasoned that

> "[b]y executing the Bond Agreement that incorporated the subcontract, Travelers implicitly agreed to be bound by the arbitration proceedings as required by the arbitration provision in the subcontract. If Travelers sought to avoid liability for its principal's bad faith damages, it could have expressed that limitation in its agreement with Peabody. Travelers correctly relies on the principle that a surety is bound only to the extent of its agreement with Peabody. The conclusion from this premise, however, must be that because its agreement with Peabody did not limit its liability and instead implicitly agreed to arbitration, Travelers must now be bound by the entirety of the arbitration award against its principal, Peabody."

Judgment in the amount of $1,209,268.75 thereupon entered against Travelers and Peabody. See G. L. c. 251, §§ 11, 14; Mass. R.Civ.P. 54(b), 365 Mass. 821 (1974). Travelers paid the contract damages and interest thereon and now appeals, claiming, as it did in Superior Court, that it is not liable for the punitive elements of the judgment.[5] As noted, we agree.

---

[5]Travelers argued in Superior Court that judgment should not enter against

2. *Discussion.* Analysis of the appellate issues properly begins with examination of the scope of Travelers' obligation under the terms of the bond. Under Massachusetts law, as under the law of other jurisdictions,

> "[a] surety's bond is a contract. It sets the limits of the surety's liability. The fact that [the] bond is required by statute does nothing to alter the settled principles of contract and suretyship law. That this is a statutory bond does not 'enlarge the risk' which the bonding company has undertaken. . . . A surety 'cannot be holden beyond the fair scope of [its] engagement, as intended by the parties when undertaken.' *President of Dedham Bank* v. *Chickering*, 4 Pick. 314, 340 (1827)."

*Peerless Ins. Co.* v. *South Boston Storage & Warehouse, Inc.*, 397 Mass. 325, 327 (1986). Accord *Commonwealth* v. *Arbella Mut. Ins. Co.*, 64 Mass. App. Ct. 901, 901 (2005) ("the bond obligation is subject to the terms of the bond itself").

In the absence of ambiguity, interpretation of a contract presents a pure question of law. See *Roberts Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973); *Sutton Corp.* v. *Metropolitan Dist. Commn.*, 423 Mass. 200, 209-210 (1996). In this contract, there is no ambiguity. Travelers' undertaking is set out in the bond's very first paragraph, where Travelers agreed "to pay for labor, materials and equipment furnished for use in the performance of the [c]onstruction [c]ontract." Travelers' agreement is consistent with the terms of G. L. c. 149, § 29, which require awarding authorities on public contracts to obtain a bond to secure payment for labor and materials subcontractors furnish to the project.[6]

By its terms, then, the bond did not cover punitive damages,

---

it for the contract damages because it had not participated in the arbitration proceedings, had not had an opportunity to present its defenses to liability under the bond, and, therefore, was not bound by the award. Whatever the merits of those arguments, see discussion, *infra*, Travelers subsequently paid the award's contract damages and interest, a total of $417,276.12, and now contests only its liability for the award's punitive elements, which total $791,992.63.

[6] In material part the statute states that "[o]fficers or agents contracting in behalf of . . . any . . . town . . . for the construction . . . of public buildings . . . . when the amount of the contract . . . is more than two thousand

payment of which is payment for punishment, not for "labor, materials and equipment." See *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 686 (1998); *Gasior* v. *Massachusetts Gen. Hosp.*, 446 Mass. 645, 653 (2006) ("purpose of punitive damages has been described as punishment and deterrence rather than compensation of an injured party"). To conclude that the bond encompassed punitive damages would be to rewrite the agreement Travelers made with Peabody and to risk diluting through punitive awards to a few subcontractors and materialmen the "security to [all] subcontractors and materialmen on public works," *LaBonte* v. *White Constr. Co.*, 363 Mass. 41, 45 (1973), that the bond is designed to afford. See *New Hampshire Ins. Co.* v. *Gruhn*, 99 Nev. 771, 773 (1983).

In reaching that conclusion, we join the authors of the Restatement of Suretyship and Guarantee and the vast majority of other courts that have considered the issue.[7] Our conclusion does not mean that Travelers is immune from punitive damages

dollars, shall obtain security by bond in an amount not less than one half of the total contract price, for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed therein." G. L. c. 149, § 29.

[7] See Restatement (Third) of Suretyship & Guarantee § 73 (1996) (surety's liability generally does not include any penalties beyond the actual losses resulting from the principal's breach); *Bull* v. *Albright*, 254 Ala. 29, 32 (1950) (surety not liable for punitive damages); *Rogers* v. *Speros Constr. Co., Inc.*, 119 Ariz. 289, 293 (1978) (liability of surety on bond limited by statute and terms of bond); *Edmonds* v. *Western Sur. Co.*, 962 P.2d 323, 326 (Colo. Ct. App. 1998) (general rule that surety bond mandated by statute does not include penalties imposed on principal); *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 536 (2004) (punitive damages not recoverable against surety bond); *American Home Assur. Co.* v. *Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992) (surety's liability limited by terms of bond); *Guardianship of Smith*, 211 Kan. 397, 402 (1973) (general rule that surety is not liable for punitive or exemplary damages as public policy requires that payment rest on party committing the wrong); *Growbarger* v. *United States Fid. & Guar. Co.*, 102 S.W. 873, 875-876 (Ky. Ct. App. 1907) (surety not liable for punitive damages of principal); *United States Fid. & Guar. Co.* v. *Mississippi*, 254 Miss. 812, 818 (1966) (surety not liable for punitive damages); *Coates* v. *United States Fid. & Guar. Co.*, 525 S.W.2d 654, 657 (Mo. Ct. App. 1975) (surety not liable for statutory penalty assessed against principal); *New Hampshire Ins. Co.* v. *Gruhn*, *supra* at 772 (bond requiring surety to pay all damages suffered did not include punitive damages as policy is to punish wrongdoer and deter others); *State ex rel. Nichols* v. *Safeco Ins. Co. of Am.*, 100 N.M. 440, 445 (1983) (surety not obligated to pay punitive damages assessed against bonded principal); *Yesel* v. *Watson*, 226 N.W. 624, 626 (N.D.

for any misdeeds of its own. See, e.g., *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66 (2001).[8] It simply means that Travelers did not undertake in the bond to pay for the misdeeds of others.

We are unpersuaded by C & I's argument that Travelers' liability under the bond was limited only by the bond's twenty-two million dollar penal sum and by a requirement that a claim be "related to" the construction contract. The latter notion springs from the terms of the bond's paragraph 9, which, in material part, provide that "[t]he surety shall not be liable to the [o]wner, [c]laimants or others for obligations of the contractor that are unrelated to" the construction contract. The quoted terms, framed entirely in the negative, contain no new undertakings, reenforce the limitation on Travelers' obligations found in paragraph 1, and are designed to forestall claims by those who furnish labor or materials that the construction contract does not require. Equally important, C & I's argument, if accepted, would convert Travelers' straightforward payment bond into a general liability policy with the broadest imaginable coverage.

Having established that the terms of the bond do not cover punitive damages, the next question is whether the arbitration proceedings, or the way Travelers approached those proceedings, somehow expanded the scope of Travelers' obligation so that it

---

1929) (surety not answerable for punitive damages recoverable against wrongdoer); *Troyer* v. *Horvath*, 13 Ohio App. 3d 155, 157 (1983) (punitive damages not recoverable from surety); *Dean* v. *Seco Elec. Co.*, 35 Ohio St. 3d 203, 206 (1988) (general principle that punitive damages not recoverable against surety unless surety authorized, participated in, or ratified act of principal); *Stumpf* v. *Pederson*, 70 P.2d 101, 103 (Okla. 1937) (surety not liable for punitive damages); *Butler* v. *United Pac. Ins. Co.*, 265 Or. 473, 474-475 (1973) (general rule that surety not liable for payment of principal's exemplary or punitive damages); *North Marion Sch. Dist. No. 15* v. *Acstar Ins. Co.*, 205 Or. App. 484, 490-491 (2006) (penalty as a matter of law cannot be payment for labor or prosecution of work in a public contract and cannot be recovered against surety); *Pennsylvania Turnpike Commn.* v. *United States Fid. & Guar. Co.*, 412 Pa. 222, 230-231 (1963) (decisions uniformly hold that liability of surety limited to actual damages sustained); *Dawson* v. *Reliance Ins. Co.*, 482 S.W.2d 882, 882 (Tex. Civ. App. 1972) (surety not liable for exemplary damages under bond).

[8] In fact, the claim against Travelers for its own alleged violations of c. 93A remains pending in the Superior Court. The motion judge certified the arbitration judgment as a final partial judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

did include punitive damages. C & I, the motion judge, and our dissenting colleague implicitly answer that question affirmatively. C & I claims that the deferential standard applicable to judicial review of arbitration awards bars a reviewing court from parsing the award or confirming fewer than all of the award's components. In addition, the dissent, the Superior Court judge, and C & I all take the position that Travelers is bound by the entire award because it failed to appear in the arbitration proceedings and assert that punitive damages were beyond the scope of its liability. We disagree and think that both positions overlook fundamentals.

C & I's first contention is that judicial review of an arbitration award is limited to determining whether the award "was procured by corruption, fraud, or other undue means" and whether the "arbitrators exceeded their powers." G. L. c. 251, § 12. That limitation, C & I contends, prohibits a court from parsing an award to confirm some parts while rejecting others. Nothing in § 12, however, prohibits a court from looking at what an arbitrator has done and, in an appropriate case, confirming the award only in part. See, e.g., *National Grid USA* v. *TransCanada Power Mktg. Ltd.*, 68 Mass. App. Ct. 28, 35, 37-38 (2007). Here the arbitrator himself applied labels to the constituent parts of his award and nothing prohibits a reviewing court from accepting those labels at face value.

The more fundamental problem for C & I, though, is that there was no award against Travelers for the court to confirm. As mentioned earlier, C & I neither demanded arbitration against Travelers nor made claims against Travelers in the arbitration proceedings, and the award said nothing about Travelers.

To be sure, in *Powers Regulator Co.* v. *United States Fid. & Guar. Co.*, 7 Mass. App. Ct. 913, 913-914 (1979), we held that a corporation may be bound by the results of an arbitration to which it is not a party. The Supreme Judicial Court reached the same result in *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 166-168 (1981) (*Kearsarge*). Although C & I relies heavily on both cases, neither case helps its cause. In the first place, being "bound by" an award means that the award precludes the nonparticipant from contesting any issue actually decided in the arbitration proceedings. It does not

necessarily mean that the award actually runs against the non-participant. See *Frontier Constr., Inc.* v. *Tri-State Mgmt. Co.*, 262 F. Supp. 2d 893, 896-897 (N.D. Ill. 2003).[9]

More fundamentally difficult for C & I, however, is that the result in *Kearsarge* and in *Powers Regulator Co.* was premised on the courts' conclusion that the bonds in those cases incorporated construction contracts containing arbitration clauses, with the consequence that the bonding company had implicitly agreed to arbitrate disputes arising under those contracts. The same conclusion lies at the heart of the dissenting opinion here.

With all due respect, however, there is no basis in this record for concluding that an arbitration clause appeared, or was incorporated, in any contract to which Travelers was a party. The bond at issue did not contain an arbitration clause. As noted earlier, the bond did incorporate the construction contract between the Town and Peabody, the construction contract being defined to mean "[t]he agreement between the [Town] and [Peabody]," including all contract documents and changes thereto. That contract is not part of the record and we therefore have no knowledge of its contents. The subcontract between Peabody and C & I incorporated the contract between the town and Peabody and, in addition, contained the arbitration provisions Peabody successfully enforced by its motion in Superior Court. It is clear, therefore, that the contract between the town and Peabody was part of the contract between Peabody and C & I. Nothing in the record before us, though, supports a conclusion that the contract between Peabody and C & I, including that contract's arbitration clause, was part of the contract

---

[9]The award's binding effect, therefore, comes from a preclusive force, similar to the preclusive force of a judgment against an indemnitee who has properly vouched a nonparticipating indemnitor into the litigation before the judgment entered in the underlying matter. In both cases, the absent party is precluded from relitigating issues actually decided in contested proceedings. See, e.g., *Oates* v. *Diamond Shamrock Corp.*, 23 Mass. App. Ct. 446, 448 (1987); *SCAC Transport (USA) Inc.* v. *S.S. Danaos*, 845 F.2d 1157, 1161-1162 (2d Cir. 1988). Vouching in has largely been supplanted by modern rules of civil procedure. See, e.g., Mass.R.Civ.P. 14, as amended by 385 Mass. 1211 (1982); *SCAC Transp. (USA) Inc.* v. *S.S. Danaos*, 845 F.2d at 1162. See also, e.g., *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 843-844 (2005) (where claims or issues are identical, claim and issue preclusion bind parties to the prior action and those in privity with them); *Petrillo* v. *Zoning Bd. of Appeals of Cohasset*, 65 Mass. App. Ct. 453, 456-457 (2006) (same).

between the town and Peabody, the only contract that had any impact on Travelers' rights.

At best, then, Travelers was bound by the resolution of any issue actually decided in the arbitration proceedings. But the issue of Travelers' obligation to pay punitive damages was not raised by the demand for arbitration, and nothing remotely touching on that issue appears in the arbitrator's award. The award, therefore, did not preclude Travelers from challenging its obligation to pay the punitive damages the arbitrator assessed against Peabody.

The remaining question thus becomes whether Travelers' failure to insert itself into C & I's arbitration proceeding against Peabody created some kind of a preclusive force the award itself did not. C & I, the motion judge, and our dissenting colleague all find such a force in principles of estoppel flowing from Travelers' statement in its motion to compel arbitration that "the liability of Travelers is derivative of the liability of Peabody" and by Travelers' absence from the arbitration proceedings.

Travelers' statement that its liability was derivative, however, was simply a restatement of the obvious. Travelers never suggested that its liability was coequal with that of its principal and at all times focused on its liability under the contract, not its liability for noncontractual obligations. Travelers' absence from an arbitration to which it was not a party and in which no claims had been asserted directly against it produces neither surprise nor the detrimental reliance that is the hallmark of estoppel. See, e.g., *Sullivan* v. *Chief Justice for Admn. & Mgmt. of the Trial Ct.*, 448 Mass. 15, 27-28 (2006).

The dissent suggests that Travelers' participation in the arbitration would have helped to conserve scarce judicial resources. Even if true, the impulse to conserve cannot trump substantive law. The question whether the bond obligated Travelers to pay punitive damages was akin to a coverage question. Coverage or scope of insurance questions generally are for the court, not the arbitrator. *Allstate Ins. Co.* v. *Harris*, 26 Mass. App. Ct. 1017, 1018-1019 (1989).[10] In fact, courts in other jurisdictions have often concluded that the surety is not required to arbitrate cover-

---

[10]An insurer's participation in arbitration where a question of coverage is at issue without raising claims regarding the scope of coverage possibly may bind that insurer to the arbitration's outcome. See, e.g., *Lumbermens Mut.*

age or other personal defenses even if it is required to arbitrate issues surrounding its principal's contractual liability. See, e.g., *Fidelity & Deposit Co. of Md.* v. *Parsons & Whittemore Contrs. Corp.*, 48 N.Y.2d 127 (1979). See also *Ames* v. *Commissioner of Motor Vehicles*, 70 Conn. App. Ct. 790, 792-795 (2002), aff'd, 267 Conn. 524 (2004). See generally *Kearsarge*, 383 Mass. at 170 n.12.

Because Travelers was entitled to a judicial assessment of its coverage obligations, the route most likely to conserve resources is the route followed here. Where, as here, the surety is not a participant in the arbitration, and the arbitration proceeds before litigation of coverage or scope issues, liability questions may disappear, taking coverage questions with them. Whether or not that result occurs in every case, the approach Travelers took in this case is the approach most likely to conserve resources where conservation is possible.

In sum, neither the bond nor any aspect of Travelers' approach to arbitration required it to pay the punitive damages the arbitrator awarded C & I. The judgment is vacated. The case is remanded for entry of a new judgment against Peabody in the amount of the arbitrator's award and against Travelers in the amount of the contract damages and interest the award contains.

*So ordered.*

BROWN, J. (dissenting). If the same counsel had not represented the general contractor and the surety,[1] this case could easily be

---

*Cas. Co.* v. *Malacaria*, 40 Mass. App. Ct. 184, 185, 190-191 (1996) (insurer that participated in arbitration bound by arbitration award because it did not "affirmatively and timely assert before the arbitration panel that it was contesting coverage" and did not "seek relief pursuant to G. L. c. 251, §§ 12 and 13, to vacate or modify" the award). Here, of course, the surety did not participate in the arbitration. Moreover, to say that a surety should somehow jump into the middle of arbitration proceedings to which it is not a party or lose its "defenses" fails to recognize that the burden of proving coverage is on those who claim that coverage exists. See, e.g., *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 321 (1991); *Dilbert* v. *Hanover Ins. Co.*, 63 Mass. App. Ct. 327, 330 (2005).

[1] I do not pause to discuss the potential conflict of interest. I do note, however, that the relationship between the principal and the surety is one of

decided under the succinct colloquial rubric — "you snooze, you lose." In this case, Travelers implicitly agreed to be bound by the result of the arbitration proceedings against its principal. Travelers also had actual notice of the arbitration proceedings, the opportunity to defend, and notice of the punitive damages sought by C & I against its principal.[2] As no allegations of fraud or collusion are raised, Travelers was therefore bound by the result.[3] I thus conclude that in these particular circumstances Travelers should not be able to tout the efficiency and reliability of arbitration, and cleverly back away from it, and then be afforded an opportunity to seek judicial relief because it does not like the arbitral result.[4] Counsel who formulated this strategy was "too smart by half."[5]

In applying principles of estoppel here to bind Travelers to the full amount of the arbitration award, the judge refused to look behind the amount of the award in order to determine whether Travelers undertook a contractual obligation to pay for punitive damages.[6] See *Peerless Ins. Co.* v. *South Boston Storage & Warehouse, Inc.*, 397 Mass. 325, 327 (1986). I think

privity. See *Mestek, Inc.* v. *United Pac. Ins. Co.*, 40 Mass. App. Ct. 729, 732 (1996).

[2]Although the complaint has not been made part of the record, the answers (which were included) dispute any bad faith conduct.

[3]Under Massachusetts law, the preferred procedural vehicle for establishing the liability of a surety would seem to be a motion for summary judgment on the bond claim in the Superior Court. See *Floors, Inc.* v. *B.G. Danis of New England*, 380 Mass. 91, 93-95 (1980); *Kearsage Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 170-171 (1980).

[4]In passing, I note that there is authority for a surety to seek declaratory relief when faced with such a dilemma as is presented here. See, e.g., *Pensacola Constr. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306 (W.D. La. 1988).

[5]"Judges don't like slick." *Britt* v. *Rosenberg*, 40 Mass. App. Ct. 552, 554 (1996), quoting from *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 410 (1990) (Brown, J., concurring). Traveler's strategy may be easily surmised: Travelers relied upon the arbitration context (and the agreement to arbitrate) to avoid attorney's fees. Under the Supreme Judicial Court precedent, C & I would be entitled to fees on a successful G. L. c. 149, § 29, claim decided in Superior Court, but not if that claim was arbitrated. It would seem fair to say that Travelers favors arbitration when it "helps," but dislikes it when it might "hurt."

[6]I agree with Travelers that the judge seemed to confuse the limit of liability with the scope of liability under the bond. Any error here was harmless.

this approach was right. This is a classic reason for imposing estoppel.[7]

The question here boils down to whether Travelers was entitled to sit out the arbitration and to select the Superior Court as the forum to litigate its bond defenses, if any. See *Fidelity & Deposit Co. of Md.* v. *Parsons & Whittemore Contrs. Corp.*, 48 N.Y.2d 127, 131-132 (1979) (finding no agreement to arbitrate "separate and distinct" controversies arising as to rights and obligations under the terms of the surety bond). There is no governing Massachusetts law on point.

Courts have split on this issue. In the majority of jurisdictions that have considered this issue, courts, applying an expansive view of incorporation by reference, have compelled sureties to arbitrate their personal defenses to liability under both the underlying construction contract and the surety bond.[8] See Shreves & Lybeck, Arbitration of Performance Bond Disputes in Suretyship 378-386 (2d ed. 2000); *Hoffman* v. *Fidelity & Deposit Co. of Md.*, 734 F. Supp. 192, 194-195 (D.N.J. 1990). Like these courts, Massachusetts has taken an expansive view of the incorporation by reference clauses contained in surety bonds.[9] See, e.g., *Massachusetts Elec. Sys., Inc.* v. *R.W. Granger & Sons, Inc.*, 32 Mass. App. Ct. 982, 982-983 (1992) (concluding that surety can be forced into arbitration through incorporation by reference clause in bond); *Travelers Cas. & Sur. Co. of Am., Inc.* v. *Long Bay Mgmt. Co.*, 58 Mass. App. Ct. 786, 788-792 (2003) (holding that the incorporation by reference clause gave to the surety the right to compel arbitration). I agree with these jurisdictions and would hold that where, as

[7]Travelers monitored the arbitration, watched Peabody do an "inadequate" job on its own contract defenses (since Peabody was in financial distress), did not intervene, and then reversed course, stepped in, and argued that it should be entitled to relitigate Peabody's defenses in the Superior Court because they were "not actually litigated."

[8]One leading commentator has noted that because most payment bonds incorporate the terms of the underlying contract, "it is increasingly likely that a surety will be deemed to have agreed to be bound by an arbitration award." Gallagher, Payment Bond Manual 70 (2d ed. 1995). The commentator also noted the trend in more recent case law not to distinguish between contractual and bond defenses and to compel the arbitration of both. See *id.* at 72.

[9]Here, however, Travelers never disputed the incorporation of the arbitration clause into the bond; in fact, it conceded that it had agreed to arbitrate.

C & I Steel, LLC *v.* Travelers Casualty and Surety Company of America.

here, the incorporation clause in the surety bond contains no restrictive language, the surety agrees to arbitrate not only the disputes relating to the construction contract, but also all disputes relating to its liability under the bond.[10]

This holding promotes our "strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes," *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007), quoting from *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 774 (1989). It conserves scarce judicial resources (rather than imposing more work on the courts) and furthers the important goal of the payment bond statute to get the money into the hands of deserving, uncompensated subcontractors like C & I as quickly as possible. See *Floors, Inc.* v. *B.G. Danis of New England, Inc.*, 380 Mass. 91, 93 (1980). Any challenge to liability for punitive damages as exceeding the scope of its obligations under the bond (or other personal defenses), I think, should have been raised at the arbitration proceedings.[11]

In sum, I take the view, as did the Superior Court judge, that Travelers was not without recourse to have avoided an arbitral assessment of punitive damages. For instance, it could have expressly disclaimed coverage for punitive damages in the payment bond. It also could, by careful drafting of the bond, have set limits on the scope of arbitral claims in the underlying construction contracts as a condition of bonding. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 671 n.5 (2002).

---

[10]I also note in passing that shared counsel in his *dual* role may have gleaned from tea leaves the "trickling negativity of an impending disaster" (or perhaps tardily reviewed the law) when he filed an emergency motion to *withdraw* immediately after receiving notice of the adverse arbitration award. The two most relevant Massachusetts cases, *Kearsage, supra,* and *Powers Regulator Co.* v. *United States Fid. & Guar. Co.*, 7 Mass. App. Ct. 913 (1979), are conspicuously absent from Travelers' brief and reply brief.

[11]Travelers did move to stay the Superior Court proceedings.